**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **RFC LENDERS OF TEXAS, LLC**, | |
| Plaintiff, | Civil Action No.: 6:23-cv-00832-XR |
| v. | |
| **SMART CHEMICAL SOLUTIONS, LLC.** | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

**DEFENDANT SMART CHEMICAL SOLUTIONS, LLC'S**
**MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND STATEMENT OF UNCONTESTED FACTS ................................. 2

III.  SUMMARY OF THE ARGUMENT .................................................................... 2

IV.  STATEMENT OF RELEVANT FACTS .............................................................. 7

  A.  The '471 Patent .............................................................................................. 7

  B.  The Claims of the '471 Patent ...................................................................... 8

V.  LEGAL STANDARDS .................................................................................... 11

  A.  Motion to Dismiss Under Rule 12(b)(6) ...................................................... 11

  B.  Patent Eligibility Under 35 U.S.C. § 101 .................................................... 12

VI.  ARGUMENT:  THE '471 PATENT CLAIMS PATENT-INELIGIBLE
    SUBJECT MATTER ...................................................................................... 13

  A.  Claim 1 of the '471 Patent is Representative of All the Claims .................... 14

  B.  *Alice* Step One: The '471 Patent is Directed to an Abstract Idea ................ 16

    1.  The Representative Claim is Focused on the Abstract Idea of
       Detecting, Transmitting and Processing Data to Monitor Vehicles ........ 17

    2.  The Representative Claim is Not Directed to a Specific
       Improvement in the Way a Computer Operates ..................................... 18

    3.  The Representative Claim Can be Carried Out Entirely by a
       Human ................................................................................................. 23

  C.  *Alice* Step Two: The '471 Patent Lacks an Inventive Concept Because It
    Does Not Add "Significantly More" to the Abstract Idea .............................. 24

VII.  CONCLUSION ............................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013)..................................................................25

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)................................................................5, 22

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................................ *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)..................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................11

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)..............................................................11, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................11

*Bilski v. Kappos*,
561 U.S. 593 (2010)..............................................................................11, 12

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
681 Fed. Appx. 950 (Fed. Cir. 2017)..........................................................22

*Concaten, Inc. v. Ameritrak Sols., LLC*,
131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 Fed. Appx. 571 (Fed. Cir. 2016)....... *passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)..........................................................14, 15, 16

*Contiguity, LLC v. Conduent Business Services, LLC*,
No. 23-cv-00038-XR, Order, Dkt. No. 27, (W.D. Tex. May 12, 2023) .............................2, 21

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017)..............................................................13, 24

*Customedia Technologies, LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)..................................................................26

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)......................................................................11

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)...................................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)......................................................... *passim*

*Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)........................................................6, 13, 23

*FairWarning IP, LLC v. Iatric Sys.*,
    839 F.3d 1089 (Fed. Cir. 2016)......................................................................11

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007)........................................................................11

*Genetic Techs. Ltd. v. Merial LLC*,
    818 F.3d 1369 (Fed. Cir. 2016)......................................................................12

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 Fed. Appx. 534 (Fed. Cir. 2021)..........................................................5, 20

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)......................................................................24

*NetSoc v. Match Grp., LLC*,
    838 Fed. Appx. 544 (Fed. Cir. 2020)............................................................13

*PerformancePartners, LLC v. FlashParking, Inc.*,
    No. 23-cv-00130-KC, 2023 U.S. Dist. LEXIS 183824 (W.D. Tex. Oct. 11, 2023)...............16

*PersonalWeb Techs. LLC v. Google*
    LLC, 8 F.4th 1310 (Fed. Cir. 2021)...............................................................24

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)......................................................................24

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)......................................................................20

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...................................................................5, 19

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)......................................................................15

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
    657 Fed. Appx. 991 (Fed. Cir. 2016) ...................................................................23

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019) ..........................................................................25

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ..........................................................................25

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................17

*Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) .....................................................................20, 24

*Voip-Pal.com., Inc. v. Apple Inc.*,
    411 F. Supp. 3d 926 (N.D. Cal. 2019) *aff'd*, 828 Fed. Appx. 717 (Fed. Cir. 2020) ............6, 22

*WhitServe LLC v. Donuts Inc.*,
    390 F. Supp. 3d 571 (D. Del. 2019), *aff'd*, 809 Fed. Appx. 929 (Fed. Cir. 2020) ..................26

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015) ......................................................................25

*Woods v. DeAngelo Marine Exhaust Sys., Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012) ..........................................................................10

*Yu v. Apple Inc.*
    1 F.4th 1040 (Fed. Cir. 2021) ........................................................................11, 13

**Statutes**

35 U.S.C. § 101 .................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 10, 11

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Smart Chemical Solutions, LLC ("Smart Chemical") respectfully submits this motion ("Motion") to dismiss Plaintiff RFC Lenders of Texas, LLC's ("RFC") Complaint (Dkt. No. 1) with prejudice for failing to state a claim upon which relief can be granted. Plaintiff's claims of patent infringement against Defendant should be dismissed because all claims of U.S. Patent No. 7,430,471 ("the '471 Patent") are invalid under 35 U.S.C. § 101 for being directed to patent-ineligible subject matter. Smart Chemical respectfully requests oral argument on this Motion.

## I.    INTRODUCTION

The '471 Patent is a textbook example of a patent that is invalid under the U.S. Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and its progeny because it claims an unpatentable abstract idea. The claims of the '471 Patent are directed to the abstract idea of detecting, transmitting and processing data to monitor vehicles. The patent's two independent claims, Claims 1 and 15 are directed to "[a] method for monitoring a vehicle." '471 Patent, Dkt. No. 1-1 at 6:18, 7:24. Problematically, the claimed methods recite only generalized steps to carry out the generic, results-focused functions of: (1) *detecting* (e.g., *collecting*) information about a vehicle; (2) *transmitting* the information about the vehicle; and (3) making a *determination* about the transmitted information (e.g., *processing* the received information). The claims do not identify any hardware – let alone special hardware – to perform these generic functions. The dependent claims add nothing meaningful to this analysis. The patent's specification is also of no assistance, and describes the purported invention only by reference to exemplary embodiments that are implemented using generic and functionally-defined general purpose computing components, such as "sensors," "readers," transmitters," "receivers," and "microprocessors." *See*, *e.g.*, *id.* at Fig. 2, 1:53-60, 2:7-11, 4:46-49, 4:61-65, 5:13-40.

1

The "invention" is clearly unpatentable under controlling law.  The Court of Appeals for the Federal Circuit has already held that claims like the ones here, which are drawn to merely collecting, processing and transmitting data, are directed to patent-ineligible abstract ideas. *Concaten, Inc. v. Ameritrak Sols., LLC*, 131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd without opinion*, 669 Fed. Appx. 571 (Fed. Cir. 2016).  More recently, this Court in *Contiguity, LLC v. Conduent Business Services, LLC* found method claims written in similar functional terms using conventional computing components were not only invalid under Section 101, but properly found to be invalid on a motion to dismiss.  The same result is warranted here.

Smart Chemical therefore respectfully requests the Court to dismiss the Complaint with prejudice.

## II.    BACKGROUND STATEMENT OF UNCONTESTED FACTS

RFC filed this lawsuit on December 6, 2023 accusing Smart Chemical of "directly infringing at least one claim of the '471 Patent."  Pl.'s Compl., Dkt. No. 1 at ¶ 27.  RFC accuses Smart Chemicals' use of certain telematics systems, including a network of devices manufactured by third party Motive Technologies, Inc., of infringing one or more of Claims 1-28 of the '471 Patent.  *Id.* at ¶¶ 14, 25-27.  RFC's Complaint attaches a copy of the '471 Patent. Dkt. No. 1-1.  Smart Chemical's response to the Complaint is due on February 23, 2024.  Text Order, dated Jan. 22, 2024.

## III.    SUMMARY OF THE ARGUMENT

The claims of the '471 Patent are directed to the abstract idea of detecting, transmitting and processing data to monitor vehicles.  This is an unpatentable abstract idea for several independent reasons, any one of which can support granting the present Motion.

*First*, the focus of the claims of the '471 Patent is an abstract idea that cannot pass Step One of the *Alice* test.  The basic concept at the heart of the claims is monitoring vehicles to

become aware of their unauthorized use.  The claims accomplish this by: (1) *detecting* movement or activation of the vehicle; (2) *transmitting* a signal indicating movement or activation of the vehicle; (3) additionally *transmitting* any information received regarding the identification of the operator of the vehicle; then (4) *determining* whether the operator identification information was received within a prescribed time interval relative to the movement or activation of the vehicle; and additionally, (5) *detecting,* at the vehicle, the presence of a landmark (such as a parking garage); and finally (6) *transmitting* data identifying the landmark and/or the location of the landmark.  '471 Patent, Dkt. No. 1-1 at 6:18-29.  How all these steps work together to monitor the vehicle is not clearly explained in the claims or the specification.  But in any event, the claims are directed to the most generic functional steps that a standard networked computer uses to detect, transmit and process data, and thus they are directed to an abstract idea under Step One of the *Alice* test.

**Second**, the '471 Patent is not directed to specific improvements to computers. Notably, Representative Claim 1 does not recite *any* computing components to perform the claimed generic functions.  Even if that was not fatal to the patent eligibility question here (which it is), the specification of the '471 Patent reveals that these generic functions are all accomplished using only conventional computing components, such as:

(1) a "motion sensor" to detect movement or activation of a vehicle ('471 Patent, Dkt. No. 1-1 at 1:51-60);

(2) any "kind[] of transmitter[]" to transmit (a) information indicating movement or activation of the vehicle, (b) received operator identification information, and (c) information identifying the landmark and/or the location of the landmark (*id.* at 4:61-65);

(3) "computers and/or microprocessors or other computing machines or capacities" to determine whether an operator identification was received within a time interval of the detected movement or activation of the vehicle (*id.* at 4:46-49); and

(4) a "radio frequency identification reader" to detect the presence of a landmark at the vehicle (*id.* at 4:65-5:1).

The '471 Patent readily admits that all of these computing components were well known at the time the application that led to the '471 Patent was filed. '471 Patent, Dkt. No. 1-1 at 5:53-59 ("[T]hose skilled in the art will appreciate that the elements and methods or processes described herein can be implemented using a microprocessor, computer, or any other computing device, and can be implemented in hardware and/or software, in a single physical location or in distributed fashion among various locations or host computing platforms"); *see also id.* at 1:51-60, 4:46-49, 4:61-5:1.

The components aside, the claims here are also abstract because they only recite generalized steps to carry out generic, results-focused computing functions. For example, Representative Claim 1 of the '471 Patent simply requires the basic results-focused computer functions of: (1) *detecting* movement or activation of a vehicle, (2) *transmitting* information indicating movement or activation of the vehicle, (3) *transmitting* any information received about the identification of the operator, (4) *determining* whether an operator identification information was received within a specified time interval relative to the detection of the movement or activation of the vehicle, (5) *detecting* the presence of a landmark at the vehicle, and (6) *transmitting* data identifying the landmark and/or the location of the landmark.

The Federal Circuit has advised that its prior decisions invalidating patents under Section 101 can be used as guidance to invalidate similar claims. In *Concaten v. AmeriTrak*, the Federal

Circuit affirmed a district court decision invalidating patent claims under Section 101 that were directed to the generic, results-focused computing functions of: *collecting* information about vehicles (e.g., their physical location), *transmitting* the collected data, *processing* the data collected from vehicles (e.g., to provide a map associated with the physical location of a selected vehicle), and *providing* the processed data (e.g., the map) to the selected vehicle.  That case is analogous here.

Indeed, the Federal Circuit consistently holds that patent claims like the ones here, which are merely directed to detecting/collecting information, transmitting the information, and analyzing the information "fall into a familiar class of claims 'directed to' a patent-ineligible concept" that fails Step One of the *Alice* test.  *See, e.g. Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352-54 (Fed. Cir. 2016).  This is particularly true where, as in the present case, all the computing components used to perform the claimed results-focused functions were described in the patent as generic or conventional.  *See, e.g., Concaten*, 131 F. Supp. 3d at 1174-75, *aff'd without opinion*, 669 Fed. Appx. 571 (Fed. Cir. 2016); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 at 912 (Fed. Cir. 2017).  Pairing generic computer components with functional, results-focused language is a hallmark of claims directed to a patent-ineligible abstract idea.  *See, e.g., Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (claims requiring results-focused actions "through the use of conventional devices, without offering any technological means of effecting that concept," are directed to an abstract idea); *see also iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 538 (Fed. Cir. 2021) (claims directed merely to taking results-focused actions using generic components shows that the claims are directed to an abstract idea); *Elec. Power Grp.*, 830 F.3d at 1356 (the "result-focused, functional character of claim language has been a frequent feature of

claims held ineligible under § 101, especially in the area of using generic computer and network technology").

Put another way, when the claims do not indicate *how* any of the required actions are accomplished by the generic components and instead focus on the results (for example, detecting movement or activation of a vehicle, without claiming how that is happening), the claims are patent ineligible. *See*, *e.g.*, *Voip-Pal.com., Inc. v. Apple Inc*., 411 F. Supp. 3d 926, 955 (N.D. Cal. 2019) *aff'd without opinion*, 828 Fed. Appx. 717 (Fed. Cir. 2020) (claims containing no instructions for *how* each step of the claimed process is accomplished but, rather, simply requiring the functional results of receiving, processing, and classifying were directed to an abstract idea).

***Third***, the claimed invention can be carried out entirely by a human. The Federal Circuit has held that a process that can be performed by humans does not become patentable simply because it is later done with a computer. *See*, *e.g.*, *Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). This is the exact situation we have here. For as long as there have been vehicles, humans could monitor them. For example, since as long as mass transportation has existed, a passenger on a bus could, through their own observations and ability to communicate, (1) detect the movement of the bus, (2) communicate that movement to a person of authority/person in control, (3) communicate the bus driver's identity to that person, (4) determine whether the bus driver's identification was provided within an acceptable time relative to the movement of the bus, (5) detect a landmark near the bus, and (6) communicate the identification of the landmark and the landmark's location to the person of authority/person in control. Computerizing this process is not patentable.

**Fourth**, Representative Claim 1 does not include an inventive concept that could transform it into a patent-eligible invention under Step Two of the *Alice* test. Claim 1 does not recite any computing technology, let alone an improvement to computing technology. Further, Claim 1 does not add anything to the abstract idea of data detection, transmission and processing beyond merely applying it in the context of vehicle monitoring. This falls well short of transforming the nature of the claim into a patent-eligible application. Claim 1 fails Step Two of the *Alice* test. *See*, *e.g.*, *Concaten*, 131 F. Supp. 3d at 1177.

A determination of whether the claims of the '471 Patent are directed to an abstract idea does not require discovery or formal claim construction. To avoid wasting judicial and party resources litigating an invalid patent, Smart Chemical respectfully requests that the Court dismiss the Complaint with prejudice now.

## IV.    STATEMENT OF RELEVANT FACTS

### A.    The '471 Patent

The '471 Patent, entitled "Method and System for Monitoring a Vehicle," issued on September 30, 2008 with 28 claims. The '471 Patent identifies the "present invention" as "a method and system for monitoring a vehicle" so that "the vehicle can be monitored … and appropriately controlled." '471 Patent, Dkt. No. 1-1 at 1:13-16. It acknowledged that prior art systems were currently available to automatically provide the present location of a truck to a communication or dispatch center using the truck's on-board Global Positioning System (GPS) receiver and a radio transceiver mounted on the truck. *See id.* at 1:18-23.

While providing the location of the truck is beneficial, the patent notes that additionally, maintaining some control over monitored vehicles would be of great value. *Id.* at 1:23-25. The specification explains that the monitoring system can "sense[]" movement or activation of the vehicle and that "[a]ny device, signal or indication of entry or tampering with the vehicle can be

7

used to represent detected movement or activation of the vehicle." *Id.* at 1:53-60. After "detecting" movement or activation, information about the vehicle and its operator can be transmitted from the monitoring system to a "control center." *Id.* at 1:61-66, 2:22-25. Eventually "a determination is made" by the control center about the information received – for example, whether the operator's identification was received by the monitoring system within an acceptable time interval relative to the detected movement of the vehicle. *Id.* at 2:26-31. According to the specification, all of this "allow[s] the control center to become aware of unauthorized usage of the vehicle, for example when the vehicle is operated and a (valid) operator identification has not been received, has not been received within acceptable time constraints, or is otherwise unacceptable and thus merits an alarm or warning to be raised to or by the control center, so that responsive or corrective action can be initiated." *Id.* at 3:55-61.

**B.    The Claims of the '471 Patent**

The '471 Patent contains only method claims. Claims 1 and 15 are the only independent claims and they each recite a similar method for monitoring a vehicle. As explained in Section VI(A), *infra* at pages 14-16, Claim 1 of the '471 Patent is representative of all the claims of the '471 Patent. Claim 1 reads as follows:

1. A method for monitoring a vehicle, comprising:

[a] detecting movement or activation of the vehicle;

[b] transmitting a signal indicating movement or activation of the vehicle, to a control center;

[c] transmitting any received operator identification information to the control center;

[d] determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;

[e] detecting at the vehicle the presence of a landmark; and

8

[f] transmitting data identifying the landmark and/or a location of the landmark to the control center.

'471 Patent, Dkt. No. 1-1 at 6:18-29.

As can be seen above, Claim 1 recites six generic steps for monitoring a vehicle, however, they can be distilled down to just three basic functions: (1) "*detecting*" information about the vehicle and its surroundings (steps [a] and [e] – detecting movement or activation of the vehicle and detecting the presence of a landmark near the vehicle), (2) "*transmitting*" information to a control center (steps [b], [c] and [f] – transmitting the vehicle's movement or activation, the vehicle operator's identification, and the detected landmark's identity and/or location), and (3) making a *determination* about that information (step [d] – determining whether operator identification information was received within an acceptable time interval relative to the movement of the vehicle). Notably, Claim 1 does not recite any components for performing these generic steps nor does it contain any technical details as to *how* the claimed method is accomplished.

The specification of the '471 Patent makes clear that this process is implemented entirely through standard, generic computing components. Indeed, when the patent application that led to the '471 Patent was drafted, the applicant acknowledged that the claimed process was implemented entirely through standard, generic computing components, which were all well-known in the prior art. These components include:

(1) "a motion sensor, a shock sensor, or … [a]ny device, signal or indication of entry or tampering with the vehicle" to detect movement or activation of a vehicle ('471 Patent, Dkt. No. 1-1 at 1:51-60);

(2) "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or instrument console of the vehicle, and so

forth" to transmit (a) information indicating movement or activation of the vehicle, (b) the vehicle operator's identification, and (c) the landmark's identity and/or location (*id.* at 4:61-65);

(3) any known reader, "for example a radio frequency identification reader" to detect the presence of a landmark at the vehicle (*id.* at 4:65-5:1); and

(4) "one or more computers and/or microprocessors or other computing machines or capacities to support the functions described herein" including to determine whether an operator identification was received within a time interval of the detected movement or activation of the vehicle (*id.* at 4:46-49).

Claim 15 is almost identical to Claim 1, except that it requires "detecting *at a landmark* the presence of a *vehicle*," instead of "detecting *at the vehicle* the presence of a *landmark*." *Compare id.* at 6:27, *with id.* at 7:34. Below is a chart illustrating in bold the only differences between Claims 1 and 15 of the '471 Patent:

| Claim 1 | Claim 15 |
|---|---|
| A method for monitoring a vehicle, comprising: | A method for monitoring a vehicle, comprising: |
| detecting movement or activation of the vehicle; | detecting movement or activation of the vehicle; |
| transmitting a signal indicating movement or activation of the vehicle, to a control center; | transmitting a signal indicating movement or activation of the vehicle, to a control center; |
| transmitting any received operator identification information to the control center; | transmitting any received operator identification information to the control center; |
| determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle; | determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle; |
| detecting *at the vehicle* the presence of *a landmark*; and | detecting *at a landmark* the presence of *the vehicle*; and |
| transmitting data identifying *the landmark* and/or a location of the landmark to the control center. | transmitting data identifying *the vehicle* and a location of the landmark to the control center. |

Like Claim 1, Claim 15 does not recite any components for performing these generic steps nor does it contain any technical details as to *how* the claimed method is accomplished.

10

## V.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(6)

In patent cases, issues that are unique to patent law are governed by Federal Circuit precedent. *See, e.g.*, *Woods v. DeAngelo Marine Exhaust Sys., Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). However, because motions to dismiss under Fed. R. Civ. P. 12(b)(6) raise purely procedural issues, courts apply the law of the regional circuit – here, the Fifth Circuit – when deciding whether such a motion should be granted. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016).

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Although factual allegations must be taken as true when considering a Rule 12(b)(6) motion, legal conclusions are given no deference – those matters are left for the court to decide. *Iqbal*, 556 U.S. at 678. Courts must also not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Moreover, "[p]atent eligibility can be determined on the pleadings … when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir.

2018).  Accordingly, a Section 101 inquiry is properly raised at the pleadings stage if it is clear from the face of the patent that its claims are directed to patent-ineligible subject matter.  *See*, *e.g.*, *Yu v. Apple Inc.* 1 F.4th 1040, 1046 (Fed. Cir. 2021); *see also FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).  In those situations, claim construction is not required to find a patent invalid under Section 101.  *See*, *e.g.*, *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("Claim construction is not an inviolable prerequisite to a validity determination under § 101.") (internal citation omitted).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of inventions that are eligible for patent protection: "any new and useful [1] process, [2] machine, [3] manufacture, or [4] composition of matter."  35 U.S.C. § 101.  The Supreme Court, however, long ago identified three categories of subject matter *not* eligible for patenting:  "[1] laws of nature, [2] physical phenomena, and [3] *abstract ideas*."  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014). "[T]he concern that drives this exclusionary principle [is] one of pre-emption."  *Alice*, 573 U.S. at 216.  That is, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work" and a monopoly over these ideas would inappropriately preempt their use in all fields.  *Bilski*, 561 U.S. at 611-12.

Determining whether a patent claim is directed to an abstract idea involves a two-step process called the "*Alice* test" which was espoused in *Alice Corp. v. CLS Bank*.  *See*, *e.g.*, *Alice*, 573 U.S. 208, 217-18.  At Step One of the test, the court must determine whether the claims at issue are directed to patent-ineligible subject matter, such as an abstract idea.  *See id.* at 217.  If the answer is yes, at Step Two of the test the court must look to the claims to determine if there is an "inventive concept."  This inventive concept may be found in "an element or combination of

elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18.

To survive a Section 101 challenge at Step Two of the *Alice* test, "a claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 573 U.S. at 221.  Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222.  As such, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223*; see also Yu*, 1 F.4th at 1043.  The Federal Circuit has "made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).  The Federal Circuit has also confirmed that a claim that can be performed by humans but is later automated using a computer is not patent-eligible. *Ericsson*, 955 F.3d at 1327; *see also NetSoc v. Match Grp., LLC*, 838 Fed. Appx. 544, 548 (Fed. Cir. 2020).

Lastly, the Federal Circuit has advised that as more courts take up Section 101 inquiries, they are encouraged to "examine earlier cases in which a similar or parallel descriptive nature can be seen – what prior cases were about, and which way they were decided." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

## VI.    ARGUMENT:  THE '471 PATENT CLAIMS PATENT-INELIGIBLE SUBJECT MATTER

The claims of the '471 Patent are invalid under Section 101 because they fail both prongs of the *Alice* test.  They fail *Alice* Step One because they are directed to the abstract idea of detecting, transmitting and processing data to monitor vehicles.  They fail *Alice* Step Two

because none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to "*significantly more* than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (emphasis added). The claims simply recite generic, results-focused steps for monitoring vehicles. The patent admits that conventional and pre-existing computing hardware is used to perform the claimed method.

All of the claims are abstract for several reasons and the case should be dismissed with prejudice.

### A.    Claim 1 of the '471 Patent is Representative of All the Claims

As a threshold matter, the Court need only analyze Claim 1 of the '471 Patent ("the Representative Claim" or "Representative Claim 1") because it is representative of all claims. A representative claim may be used in analyzing patent eligibility under Section 101 where all of the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Here, the Representative Claim recites a method with the following steps: (1) detecting movement or activation of the vehicle, (2) transmitting a signal indicating the movement or activation of the vehicle to a control center, (3) transmitting any received operator identification information to the control center, (4) determining whether the operator identification information was received within a certain time interval relative to the detected movement or activation of the vehicle, (5) detecting the presence of a landmark, and (6) transmitting data identifying the landmark and/or its location to the control center. *See* the '471 Patent, Dkt. No. 1-1 at 6:18-29. The purpose of these steps is to remotely monitor a vehicle so as to allow the control center to become aware of unauthorized usage. Put simply, the claim is directed to nothing more than the abstract idea of detecting, transmitting and processing data to monitor vehicles.

Claim 1 of the '471 Patent is representative because it captures all relevant concepts set forth in all of the claims, and because the remaining claims of the '471 Patent add, at most, only small variations and are "substantially similar" to Claim 1 for purposes of the Section 101 analysis. *See Content Extraction*, 776 F.3d at 1348; *see also Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368, n.7 (Fed. Cir. 2017).

As shown in Section IV(B), *supra* at page 10, Independent Claim 15 is nearly identical to Representative Claim 1, except that it requires "detecting *at a landmark* the presence of the *vehicle*," instead of "detecting *at the vehicle* the presence of a *landmark*." *Compare id.* at 6:27, *with id.* at 7:34. As such, like Claim 1, Claim 15 is directed to the abstract idea of detecting, transmitting and processing data to monitor vehicles.

Dependent Claims 2-14 and 16-28, merely add:

(1) additional generic steps for accomplishing the claimed method for monitoring vehicles, such as:

(a) determining whether an operator identification was received prior to the detected movement or activation of the vehicle, determining whether a received operator identification is valid, and setting an alarm condition in a case where a valid operator identification was not received prior to or within the time interval of the detected movement or activation of the vehicle (Claims 2, 3, 16 and 17);

(b) transmitting location coordinates of the vehicle provided by a GPS receiver co-located with the vehicle (Claims 4 and 18);

(c) determining the location of the vehicle based on the transmission and receipt of beacon signals from the vehicle (Claims 5-7 and 19-21); and

(d) transmitting operation information regarding the vehicle (Claims 12 and 26); or

(2) additional generic components that perform their basic functions, such as:

(a) a radio communications device (i.e., cellular phone) for transmitting data from the vehicle, and a radio communications service provider (i.e., a cellular communications service provider) that supports the operation of the radio communications device and indicates the location of the radio communications device (Claims 8-9 and 22-23);

(b) a Radio Frequency Identification transceiver and a Radio Frequency Identification tag for detecting the presence of the landmark (Claims 10-11 and 24-25); and

(c) a reader (i.e., token reader and biometric read) for receiving operator identification information (Claims 13-14 and 27-28)).

In sum, all of the claims of the '471 Patent should fall together regarding subject-matter eligibility because they are substantially similar to Representative Claim 1. *See, e.g.*, *Content Extraction*, 776 F.3d at 1348 (approving the use of a representative claim where "all the claims are substantially similar and linked to the same abstract idea"); *see also PerformancePartners, LLC v. FlashParking, Inc.*, No. 23-cv-00130-KC, 2023 U.S. Dist. LEXIS 183824, at *6-10 (W.D. Tex. Oct. 11, 2023).

### B.    *Alice* Step One: The '471 Patent is Directed to an Abstract Idea

In determining patent eligibility under Section 101, the Court must first decide whether the claims are directed to an abstract idea at Step One of the *Alice* test. *Alice*, 573 U.S. at 217. Under any plausible reading, the claims of the '471 are focused on the unpatentable abstract idea of detecting, transmitting and processing data to monitor vehicles. In addition, the claims of the '471 Patent cannot survive *Alice* Step One for the independently-invalidating reasons that they

recite generic steps to carry out basic, results-focused functions rather than reciting a specific improvement to computers, and they can be carried out entirely by a human.

> 1. **The Representative Claim is Focused on the Abstract Idea of Detecting, Transmitting and Processing Data to Monitor Vehicles**

Step One of the *Alice* test requires analyzing the "focus" of the claims – their "character as a whole." *Elec. Power Grp.*, 830 F.3d at 1353. While some claims may appear complex on their face, the goal of this step is to identify the "basic concept" at the "heart" of the claims. *Id*.

The basic concept at the heart of the Representative Claim is monitoring vehicles to become aware of their unauthorized usage. The claim accomplishes this by detecting information about the vehicle, transmitting information about the vehicle, and making a determination about the transmitted information using generic components and known processes. '471 Patent, Dkt. No. 1-1 at 6:18-29. At its core, the Representative Claim therefore describes some of the most generic functional steps of a standard computer (i.e., detecting and transmitting data and making a determination based on that data) and then deploying these functions to monitor vehicles. This broad concept is not patent eligible because it "recite[s] an abstraction – an idea, having no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

The '471 Patent's reference to conventional computer and network hardware to accomplish its claimed process, such as a "motion sensor," "transmitter," "reader," and "computers and/or microprocessors" does not make the Representative Claim any less abstract and actually underscores its patent ineligibility. *Id.* Notably, the Representative Claim is not limited to any particular components used for detecting, transmitting and processing data, and it also does not explain how any of those steps are performed. Rather, the claim simply

17

"embrace[s] the abstract idea of" monitoring vehicles.  Similar claims have already been found to be unpatentable.  *Concaten*, 131 F. Supp. 3d at 1173-75.

In short, the Representative Claim does nothing more than use existing technology to (1) *detect* movement of a vehicle and the presence of a landmark near the vehicle; (2) *transmit* the detected information and the vehicle operator's identification to a control center; and (3) make a *determination* about whether the vehicle operator's identification was received within a prescribed time interval relative to the movement of the vehicle.  This is clearly an abstract idea under Step One of the *Alice* test.

## 2. The Representative Claim is Not Directed to a Specific Improvement in the Way a Computer Operates

The Representative Claim is also patent ineligible for three additional reasons (each of which can support an invalidity finding under Section 101 on their own) related to the fact that it is not directed to specific improvements in computer technology.

**First**, the Representative Claim does not cover an improvement to computer components. Indeed, the Representative Claim actually does not recite or reference *any* components for practicing the patented method.  However, the specification reveals that the claimed generic functions of Representative Claim 1 are all accomplished using only conventional computing components, as illustrated in the table below:

| Claimed Function | Generic Computing Component Performing the Claimed Function |
|---|---|
| (1) detecting movement or activation of a vehicle, | "a motion sensor, a shock sensor, or … [a]ny device, signal or indication of entry or tampering with the vehicle" to detect movement or activation of a vehicle ('471 Patent, Dkt. No. 1-1 at 1:51-60), |
| (2) transmitting information indicating movement or activation of the vehicle, | "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or instrument console of the vehicle, and so forth" to transmit information indicating movement or activation of the vehicle (*id.* at 4:61-65), |
| (3) transmitting any received operator | "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or |

| Claimed Function | Generic Computing Component Performing the Claimed Function |
|---|---|
| identification information, | instrument console of the vehicle, and so forth" to transmit any received operator identification information (*id.* at 4:61-65),<br><br>"operator identification information" is described by the '471 Patent as "any proffered operator identification information" such as a "credit card, a proximity tag, a radio frequency identification tag, or other token or device that can be used to present identification or authentication information" (*id.* at 1:66-2:6), "biometric identification such as a fingerprint, a retinal pattern, a voice or speech sample, or any other biometric measure or combination of measures" (*id.* at 2:11-14), and "alphanumeric or other identification code" (*id.* at 2:18-20), |
| (4) determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle, | "one or more computers and/or microprocessors or other computing machines or capacities to support the functions described herein" including determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle (*id.* at 4:46-49), |
| (5) detecting the presence of a landmark at the vehicle, and | a reader, "for example a radio frequency identification reader" to detect the presence of a landmark at the vehicle (*id.* at 4:65-5:1), and |
| (6) transmitting data identifying the landmark and/or the location of the landmark. | "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or instrument console of the vehicle, and so forth" to transmit information identifying the landmark and/or the location of the landmark (*id.* at 4:61-65). |

The '471 Patent admits that all of these computing components were well known before the alleged invention:

> [T]hose skilled in the art will appreciate that the elements and methods or processes described herein can be implemented using a microprocessor, computer, or any other computing device, and can be implemented in hardware and/or software, in a single physical location or in distributed fashion among various locations or host computing platforms.

'471 Patent, Dkt. No. 1-1 at 5:53-59; *see also id.* at 1:51-60, 4:46-49, 4:61-5:1. In short, the

Representative Claim is not directed to any new computer components. This is one hallmark of

an abstract idea.  *See, e.g., Concaten*, 131 F. Supp. 3d at 1174-75, *aff'd without opinion*, 669 Fed. Appx. 571 (Fed. Cir. 2016); *Secured Mail Sols.*, 873 F.3d at 910.

**Second**, the Representative Claim is also abstract because it only recites basic computing functions.  Again, the Representative Claim recites: (1) "*detecting* movement or activation of the vehicle," (2) "*transmitting* a signal indicating movement or activation of the vehicle to a control center," (3) "*transmitting* any received operator identification information to the control center," (4) "*determining* whether an operator identification was received within a time interval of the detected movement or activation of the vehicle," (5) "*detecting* at the vehicle the presence of a landmark," and (6) "*transmitting* data identifying the landmark and/or a location of the landmark to the control center."  '471 Patent, Dkt. No. 1-1 at 6:18-29 (emphasis added).

There can be no real dispute that the claimed steps of "detecting," "transmitting," and "determining" are generic computing functions.  The Federal Circuit has repeatedly recognized that claims directed to generic computer functions such as detecting/collecting data, transmitting the data and making a determination based on the data are in "a familiar class of claims 'directed to' a patent-ineligible concept.'"  *Elec. Power Grp.*, 830 F.3d at 1351-54 (finding claims reciting the generic steps of "receiving … data," "detecting and analyzing events," from the received data, and "displaying the event analysis results" were directed to the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis.").[1]

_____

[1] *See also iLife Techs.*, 839 Fed. Appx. at 537 (holding that claims to a system for detecting movement of an object using acceleration data from a sensor were directed to the patent-ineligible abstract idea of "gathering, processing and transmitting data"); *Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (finding claims for "receiving physiologic treatment data" from bedside machines, "converting" the data, "performing at least one programmatic action," and "presenting" the data were directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data" and patent-ineligible under Section 101); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (holding claims for "selecting" data, "performing" statistical analysis, and "provid[ing] a report of the analysis were

Indeed, this Court, following *Elec. Power Grp.* and *Univ. of Fla. Rsch. Found.*, recently ruled

that analogous claims reciting the generic computing functions of "acquiring" images,

"identifying" vehicles, "determining the speed" of the vehicle, "generating a citation," and

"attempting to transmit" the citation were "directed to the abstract idea of collecting, analyzing,

and displaying data." *Contiguity, LLC v. Conduent Business Services, LLC*, No. 23-cv-00038-

XR, Order, Dkt. No. 27 (W.D. Tex. May 12, 2023) (J. Rodriquez) at Slip Op. 8 (attached hereto

as Exhibit A). The claims here recite similar generic computing functions and the same result is

warranted.

Even putting aside this Court's treatment of similar claims, the Federal Circuit in

*Concaten* affirmed a district court decision finding comparable claims invalid because they were

not directed to a specific improvement in the way a computer operates. *Concaten*, 131 F. Supp.

3d at 1173. The patents at issue related to "relaying weather and road data to and from snow

plows." *Id.* at 1169. The method claims required the steps of "(a) *receiving* … from … snow

maintenance vehicles … information [about the] vehicle physical location and … weather and

road conditions; (b) *processing* … the received collected information to (i) *provide* a map … and

(ii) *determine* an instruction for an operator of the … vehicle; and (c) *providing* … the map and

an operator instruction …, wherein the map is visually displayed … to the operator and … the

operator instruction … comprises … an alarm based on … weather conditions, … and road

conditions." *Id.* at 1170 (emphasis added).

The court found that the "*claim is drawn to the concept of receiving, processing, and

transmitting data*," which "is an abstract idea." *Id.* at 1174. "The patent describe[d] only the

idea of receiving information from snow plows, processing the information, and sending an

_____

directed to the patent-ineligible abstract idea of "selecting certain information, analyzing it using
mathematical techniques, and reporting or displaying the results of the analysis").

'operator instruction' and a map back to the snow plow operator." *Id.* The court determined that the method claims did not "describe any new method" in the way a computer operates for collecting or processing data and thus were directed to a patent-ineligible abstract idea. *Id.* The claims here suffer the same problem, and the same invalidity finding should be reached.

**Third**, the Representative Claim is abstract for the independent reason that it does not recite any specific implementation of the abstract idea. Nothing in the claim indicates *how* any of the claimed actions are accomplished by the generic computer and network components. The Representative Claim fails to specify: (1) *how* movement or activation of the vehicle is detected, (2) *how* a signal indicating movement or activation of the vehicle is transmitted to the control center, (3) *how* the received operator identification information is transmitted to the control center, (4) *how* whether an operator identification was received with a time interval of the detected movement or activation of the vehicle is determined, (5) *how* the presence of a landmark is detected at the vehicle, or (6) *how* data identifying the landmark and/or location of the landmark is transmitted to the control center. For example, when the Representative Claim requires "determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle," it fails to specify *any* specific "determining" technique. *See, e.g., Voip-Pal.com., Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 955 (N.D. Cal. 2019) (finding claims that "contain[] no instructions for how each step of the [claimed process] is accomplished" and instead "simply require[] the functional results of 'receiving,' 'processing,' and 'classifying'" were directed to a patent-ineligible abstract idea), *aff'd without opinion*, 828 Fed. Appx. 717 (Fed. Cir. 2020).[2] In short, the Representative Claim recites only "the *what* of

---

[2] *See also Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017) ("[A] method for collection, analysis, and generation of information reports, where the claims are not limited to how the collected information is analyzed or reformed, is the height of

the invention, but none of the *how* that is necessary to turn the abstract ideas into a patent-eligible application"; it can be deemed invalid under Section 101 for this reason alone. *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 Fed. Appx. 991, 993 (Fed. Cir. 2016) (emphasis in original).

### 3.    The Representative Claim Can be Carried Out Entirely by a Human

The Representative Claim is also directed to an abstract idea for the independent reason that all of its steps (generic detecting, transmitting and processing actions) can be accomplished entirely by a human. *See, e.g., Ericsson*, 955 F.3d at 1327.

Again, Representative Claim 1 recites the following six steps: (1) detecting movement or activation of a vehicle; (2) transmitting a signal indicating movement or activation of the vehicle; (3) transmitting any received operator identification information; (4) determining whether the operator identification information was received within a prescribed time interval relative to the movement or activation of the vehicle; (5) detecting at the vehicle the presence of a landmark; and (6) transmitting data identifying the landmark and/or the location of the landmark.

These steps can all be performed by a person, for example, a passenger on a bus. For as long as mass transportation has existed, a passenger on a bus could (1) detect the movement of the bus, (2) communicate that movement to a person of authority/person in control, (3) communicate the bus driver's identity to a person of authority/person in control, (4) determine whether the bus driver's identification was provided within an acceptable time relative to the movement of the bus, (5) detect a landmark near the bus, and (6) communicate the identification of the landmark and the landmark's location to a person of authority/person in control. The

---

abstraction."); *Affinity Labs of Tex.*, 838 F.3d at 1262 (taking action "through the use of conventional devices, without offering any technological means of effecting that concept" indicates that the claims are directed to an abstract idea).

passenger could detect the movement of the bus and the landmark near the bus through their own observations. The passenger could communicate the movement of the bus, the bus driver's identity and the identification of the landmark and its location to a person of authority using any desired means such as orally, telephonically, or even via First Class mail. Lastly, the passenger could determine whether the bus driver's identification was provided within an acceptable time relative to the movement of the bus based on their own observations. Computerizing this process is not patentable. *E.g.*, *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding claims that "could all be performed by humans without a computer" were directed to a patent-ineligible abstract idea).

In short, this is a "quintessential 'do it on a computer'" automation patent, which cannot pass muster under Section 101 jurisprudence. *See*, *e.g.*, *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367; *see also PersonalWeb Techs. LLC v. Google* LLC, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (claims for data management tools were "directed to a medley of [human] mental processes," which is a "telltale sign of abstraction"); *Credit Acceptance*, 859 F.3d at 1055 ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology").

*    *    *

The Representative Claim fails *Alice* Step One for each of these independently-invalidating reasons, and is unquestionably directed to an unpatentable abstract idea.

### C.  *Alice* Step Two: The '471 Patent Lacks an Inventive Concept Because It Does Not Add "Significantly More" to the Abstract Idea

Because the Representative Claim fails *Alice* Step One, it is invalid unless it embodies an "inventive concept" under *Alice* Step Two. *Alice*, 573 U.S. at 221. In Step Two of the *Alice* test, the Court "search[es] for an inventive concept sufficient to transform the nature of the claim into

24

a patent-eligible application." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 672 (2018). "To save a patent at step two, an inventive concept must be evident *in the claims*." *Id.* (emphasis added). This inventive concept "must be significantly more than the abstract idea itself." *Bascom Glob. Internet Servs.*, 827 F.3d at 1349. Notably, "[t]he abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'" *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (citation omitted). In many Section 101 cases, the claims themselves do recite some technology, and the issue becomes whether that technology is enough to transform the claim into patent-eligible subject matter. For example, in the *Alice* case itself, the Supreme Court addressed whether "[t]he introduction of a computer into the claims" altered the Section 101 eligibility analysis. *Alice*, 573 U.S. at 222. In the end, the Court held that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223; *see also Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 416-17 (D.N.J. 2015) ("As the Supreme Court has previously held, adding a computer to otherwise conventional steps does not make an invention patent-eligible.").

Here, as explained in Section VI(B)(2), *supra* at pages 18-19, the Representative Claim does not recite *any* technology at all. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the *claims*.") (emphasis added). The Representative Claim contains no "additional features" – inventive or otherwise – beyond the abstract idea itself. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (requiring an evaluation "to determine whether *additional substantive limitations* . . . narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full

abstract idea itself") (emphasis added) (citation omitted).  The Representative Claim recites only functional limitations that are tied to the monitoring of a vehicle that consists of the abstract steps of "detecting" information about the vehicle, "transmitting" that information, and making a "determination" about the information.  Nothing else is claimed.

As the Federal Circuit has repeatedly explained, there is no inventive concept when "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology for gathering, sending, and presenting the desired information."  *Elec. Power Grp.*, 830 F.3d at 1355; *see also Customedia Technologies, LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (holding that the claims had no inventive concept because "[a]side from the abstract idea of delivering targeted advertising, the claims recite only generic computer components").  In other words, for an inventive concept to be present, the claims must be directed to an "improvement in the computer technology itself." *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 581 (D. Del. 2019), *aff'd*, 809 Fed. Appx. 929 (Fed. Cir. 2020).  Here, the Representative Claim does not add anything to the abstract idea of data detection, transmission and processing beyond merely applying it in the context of vehicle monitoring.  This falls well short of transforming the nature of the claim into a patent-eligible application.  *See*, *e.g.*, *Concaten*, 131 F. Supp. 3d at 1177.

In light of the above, the Representative Claim fails *Alice* Step Two and is directed to an unpatentable abstract idea under Section 101.

## VII.   CONCLUSION

For the foregoing reasons, Smart Chemical respectfully requests that the Court grant this Motion, find all claims of the '471 Patent invalid for being directed to a patent-ineligible abstract idea, and dismiss RFC's Complaint with prejudice.

Dated:  February 23, 2024

Respectfully submitted,

**KELLEY DRYE & WARREN LLP**

_/s/ Michael J. Zinna_
Michael J. Zinna (admitted in W.D. Tex.)
Vincent M. Ferraro (admitted in W.D. Tex.)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone:  (973) 503-5900
Facsimile:  (973) 503-5950
Email:  MZinna@KelleyDrye.com
Email:  VFerraro@KelleyDrye.com

***Attorneys for Defendant***
***Smart Chemical Solutions, LLC***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 23, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court for the U.S. District Court for the Western District of Texas, using the electronic case filing system of the Court, which will effect service of the foregoing on all parties of record.

*/s/ Michael J. Zinna*
_____
Michael J. Zinna
