**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **RFC LENDERS OF TEXAS, LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO.: 6:23-cv-832-XR** |
| **v.** | **JURY TRIAL DEMANDED** |
| **SMART CHEMICAL SOLUTIONS, LLC** | |
| **Defendant.** | |

**PLAINTIFF'S RESPONSE TO DEFENDANT SMART CHEMICAL SOLUTIONS,
LLC'S MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

RFC Lenders of Texas, LLC ("RFC" or "Plaintiff") files the following Response

("Response") to the Motion of Defendant Smart Chemical Solutions. LLC's ("Defendant") to

Dismiss the Complaint for Patent Infringement (Dkt. # 9). For the reasons set forth below,

Defendant's Motion should be denied.

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction | 5 |
| II. | Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) are Disfavored in the Fifth Circuit | 6 |
| III. | Under 35 U.S.C. § 282(a), Each Claim of a U.S. Patent is Presumed Valid | 7 |
| IV. | Under 35 U.S.C. § 101, a "New and Useful Process" Constitutes Patentable Subject Matter | 8 |
| V. | The Supreme Court's Mayo/Alice Test for Patent-Eligible Subject Matter | 8 |
| VI. | Evaluation of Patent Validity at the Pleading Stage is Problematic | 9 |
| VII. | The Claims of the '471 Patent Are Not Merely Directed to Laws of Nature, Natural Phenomena or Abstract Ideas | 10 |
| VIII. | The Claims of the '471 Patent Incorporate Many Inventive Concepts | 12 |
| IX. | Defendant Has a Burden to Demonstrate the Invalidity of All Claims of the '471 Patent by Clear and Convincing Evidence | 15 |
| X. | Defendant Has Clearly Not Met its Burden to Demonstrate the Invalidity of All Claims of the '471 Patent by Clear and Convincing Evidence | 17 |
| A. | Claim 1 of the '471 Patent is Not "Representative" of All of the Claims of the '471 Patent | 17 |
| B. | Claim 1 of the '471 Patent is Not Merely Directed To the "Abstract Idea" of Detecting, Transmitting and Processing Data to Monitor Vehicles | 18 |
| C. | The Process Recited in Claim 1 of the '471 Patent Can Improve the Manner in Which a Fleet Monitoring Network Operates | 20 |
| D. | The Process Recited in Claim 1 of the '471 Patent Cannot Be Performed by a Single Human Being | 20 |
| E. | The Claims of the '471 Patent Add "Significantly More" Beyond Detecting, Transmitting and Processing Data | 22 |
| XI. | Conclusion | 24 |

# TABLE OF AUTHORITIES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121, 1128 (Fed. Cir. 2018)...................................................................... 8, 9, 14, 15

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ........................................................................................................... 7, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) ....................................................................................................... 6

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   569 U.S. 576, 589 (2013) ....................................................................................................... 7

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*,
   687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ........................................................................... 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007) ....................................................................................................... 6

*Berkheimer v. HP, Inc.*,
   881 F.3d 1360, 1368 (Fed. Cir. 2018) ..................................................................... 14, 15, 16

*Campbell v. Wells Fargo Bank, N.A.*,
   781 F.2d 440, 442 (5th Cir. 1986) ......................................................................................... 6

*Conley v. Gibson*,
   355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).......................................................................... 6

*Core Wireless Licensing*
   *S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).............................................. 8

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*
   Civil Action No. SA-18-CV-1335-XR, at *3 (W.D. Tex. June 25, 2019) ............................ 8, 18

*Encoditech, LLC v. Qardio, Inc.*,
   C.A. No. 1:18-864, 2019 WL 2526725, at *2 (D. Del. June 19, 2019) .................................. 18

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089, 1097 (Fed. Cir. 2016) .................................................................................... 9

*Fernandez-Montez v. Allied Pilots Assoc.*,
   987 F.2d 278, 284 (5th Cir. 1993) ......................................................................................... 6

*Kennedy v. Tangipahoa Parish Library Bd. of Control*,
    224 F.3d 359, 365 (5th Cir. 2000) ................................................................................. 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66, (2012) ................................................................................................. 7, 8

*Microsoft Corp. v. I4I Ltd. P'ship*,
    564 U.S. 91 (2011) ................................................................................................. 6

*MyMail v. ooVoo*,
    934 F.3d 1373, 1379 (Fed. Cir. 2019) ..................................................................... 15

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042, 1050 (Fed. Cir. 2016) ..................................................................... 8

Fed. R. Civ. P. 12(b)(6) ................................................................................. passim

35 U.S.C. § 101 .............................................................................................. passim

35 U.S.C. § 282(a) ........................................................................................ 5, 6

## I.    INTRODUCTION

On December 6, 2023, Plaintiff RFC Lenders of Texas LLC filed its Original Complaint (Dkt. #1) against Defendant Smart Chemical Solutions of Texas, LLC for infringement of United States Patent No. 7,430,471, ("the '471 Patent") entitled "Method and System for Monitoring a Vehicle."  The 28 claims of the '471 Patent are directed to a variety of new and useful processes for monitoring the status and locations of vehicles. Using the processes described in and claimed by the '471 Patent, a determination can readily and efficiently be made at a central location as to (a) whether a vehicle is in motion or activated, (b) whether a vehicle is under the control of an authorized operator and (c) whether the vehicle is in an authorized location.

The inventive unified combination of functionalities described in and claimed by the '471 Patent are not found in any prior art processes.  The claimed inventive processes provide a technological advantage, in that the data identifying authorized operators can be maintained and updated at a central location.  The claimed inventive processes improve the operation of a network, to the extent that data relating to authorized operators does not need to be transmitted to each vehicle location.

On February 23, 2024, Defendant filed a Motion to Dismiss Plaintiff's Original Complaint under Fed. R. Civ. P. 12(b)(6) (Dkt. #9) based on the allegation that the Original Complaint failed to state a claim upon which relief could be granted.  Specifically, Defendant argues that all claims of the '471 Patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

On March 22, 2024, Plaintiff filed with this Court a Motion for Leave to File an Amended Complaint (Dkt #15), attaching Plaintff's Amended Complaint ("Amended

Complaint") thereto.  Plaintiff's Motion for Leave is pending before the Court as of the time of this Response.

As set forth in further detail below, Defendant's Motion should properly be denied by this Court for at least the following reasons:

1.  Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are strongly disfavored in the Fifth Circuit;

2.  Under 35 U.S.C. § 282(a), each claim of a U.S. Patent is presumed valid;

3.  Evaluation of patent validity at the pleading stage is problematic;

4.  The claims of the '471 Patent are not merely directed to laws of nature, natural phenomena or abstract ideas;

5.  The 28 claims of the '471 Patent incorporate many inventive concepts;

6.  Defendant has a burden to demonstrate the invalidity of all claims of the '471 Patent by clear and convincing evidence; and

7.  Defendant has not demonstrated the invalidity of even a single claim of the '471 Patent by clear and convincing evidence.

The above points are addressed in detail under separate headings below.

## II.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) are Disfavored in the Fifth Circuit:

The Federal Rules of Civil Procedure provide a mechanism by which a complaint failing to state a legally-cognizable claim may be dismissed. Rule 12(b) of the rules provides as follows:

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
(1) lack of subject-matter jurisdiction;
(2) lack of personal jurisdiction;
(3) improper venue;
(4) insufficient process;
(5) insufficient service of process;
(6) failure to state a claim upon which relief can be granted; and
(7) failure to join a party under Rule 19.

As the Court is aware, dismissal of a case at the pleading stage is strongly disfavored in the Fifth Circuit.  *See, e.g., Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000).  For purposes of a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, the complaint is to be liberally construed in favor of the plaintiff.  *Campbell v. Wells Fargo Bank, N.A*., 781 F.2d 440, 442 (5th Cir. 1986).  In evaluating a motion to dismiss under Rule 12(b)(6), a court is called upon to accept all factual allegations set forth in the complaint as true. *Fernandez-Montez v. Allied Pilots Assoc*., 987 F.2d 278, 284 (5th Cir. 1993).

In order to survive a 12(b)(6) motion to dismiss, a complaint must only contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  District courts are to avoid such dismissals "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

## III.     Under 35 U.S.C. § 282(a), Each Claim of a U.S. Patent is Presumed Valid:

Pursuant to federal statutory law, each claim of an issued United States Patent is presumed to be valid.  Section 282(a) of Title 35 of the United States Code provides as follows:

> (a)  In General.—
> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

A party challenging the validity of any claim of an issued U.S. patent bears the burden of proving the invalidity of the claim, including all underlying factual matters, by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011); *see also Amazn.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[W]hether performed at the preliminary injunction stage or at some later stage in the course of a particular case, infringement and validity analyses must be performed on a claim-by-claim basis.").

**IV.    Under 35 U.S.C. § 101, a "New and Useful Process" Constitutes Patentable Subject Matter:**

The explicit scope of patentable subject matter provided for under the patent statute is very broad. Section 101 of Title 35 of the United States Code provides as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Although the explicit scope of Section 101 is very broad on its face, the U.S. Supreme Court has ruled that there are certain exceptions to the explicit scope of Section 101.  In particular, the Court has ruled that the "basic tools[s] of scientific and technological work" are not patentable. These "basic tools" include laws of nature, natural phenomena, and abstract ideas.  *See Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013).

**V.    The Supreme Court's *Mayo/Alice* Test for Patent-Eligible Subject Matter:**

The Supreme Court has set forth a two-stage test for resolution of patent eligibility questions under 35 U.S.C. § 101.  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, (2012); *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  The so-called "Mayo/Alice Test" involves two separate inquiries.  First, the court is called upon to evaluate whether the claim, taken as a whole, is "directed to" subject matter falling into one of the identified exceptions to patentable subject matter.  *Alice*, 573 U.S. at 217.

In evaluating step one of the *Mayo/Alice* Test, the court is advised not to oversimplify the claims or the claimed inventions.  The question is not whether patent-ineligible subject matter is somehow related to the claimed subject matter.  The relevant inquiry is whether the claim is

actually "directed to" the ineligible subject matter. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016). As noted by this court, "at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, Civil Action No. SA-18-CV-1335-XR, at *3 (W.D. Tex. June 25, 2019).

If the claim is not "directed to" a law of nature, a natural phenomenon or an abstract idea, the claim is directed to patentable subject matter under 35 U.S.C. 101, and no further analysis is necessary under *Mayo/Alice. See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If the court determines that the claim is directed to a law of nature, a natural phenomenon or an abstract idea, then further analysis is required.

Where a claim is found to be directed to a law of nature, a natural phenomenon or an abstract idea, the court is then called upon to consider the elements of each claim of the patent both individually and as an ordered combination, so as to determine "whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217.  In other words, the Court must determine whether the claims of the patent contain an "inventive concept."  There is an "inventive concept" when the claimed subject matter "amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 566 U.S. at 72–73. A claim incorporates an "inventive concept" when it involves "more than performance of well-understood, routine, [and] conventional activities previously known to the industry," *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1128 (Fed. Cir. 2018).

**VI.    Evaluation of Patent Validity at the Pleading Stage is Problematic:**

Patent validity can potentially be resolved at the Rule 12(b)(6) stage, but only so long as "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a

matter of law." *Aatrix*, 882 F.3d at 1125.  Where, however, the complaint sets forth plausible factual allegations supporting the patentability of the claims, such factual allegations will generally preclude dismissal under Rule 12(b)(6).  *See Aatrix*, 882 F.3d at 1125 (*citing FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)).

In the context of a 12(b)(6) motion alleging that a patent claim is not directed to patentable subject matter, the motion will be evaluated according to the plausible allegations set forth in the complaint.  When the complaint contains plausible allegations that individual elements and the claimed combination are not well-understood, routine, or conventional activity, the complaint is not subject to dismissal under Rule 12(b)(6).  *See Mirror Imaging, LLC v. PNC Bank, N.A.*, No. W-21-CV-00518-ADA, 2022 WL 229363, at *4 (W.D. Tex. Jan. 26, 2022).

Plaintiff's Amended Complaint sets forth a variety of factual allegations to be resolved before the patentability of the 28 claims of the '471 Patent can be appropriately evaluated.  As set forth in the Amended Complaint, the claims of the '471 Patent are directed to certain novel, inventive and patentable processes for monitoring fleet vehicles and preventing theft and unauthorized usage thereof.  These inventive processes go beyond what was known in the prior art and what was well-understood, routine, and conventional at the time of the filing of the patent application.  The claimed inventive processes set forth in the independent claims of the '471 Patent recite steps and limitations that were not disclosed in the prior art, and which provide demonstrable functional advantages over the prior art.  See Amended Complaint, ¶¶ 15-24.

## VII.    The Claims of the '471 Patent Are Not Merely Directed to Laws of Nature, Natural Phenomena or Abstract Ideas:

As set forth above, 35 U.S.C. § 101 provides that a person who invents any new and useful process, machine, manufacture, or composition of matter may obtain a patent.  As also set forth above, the courts have recognized patents may not be properly granted for laws of nature,

natural phenomena or abstract ideas.  The claims of the '471 Patent do not fall into any of these categories.  Independent claim 1 of the '471 Patent reads as follows:

> 1. A method for monitoring a vehicle, comprising:
> detecting movement or activation of the vehicle;
> transmitting a signal indicating movement or activation of the vehicle, to a control center;
> transmitting any received operator identification information to the control center;
> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;
> detecting at the vehicle the presence of a landmark; and
> transmitting data identifying the landmark and/or a location of the landmark to the control center.

Claim 1 is directed to a new and useful process for monitoring a vehicle.  As such, it is directed to subject matter expressly and explicitly encompassed within 35 U.S.C. § 101.  It is beyond dispute that claim 1 is not directed to a "law of nature" or a "natural phenomenon."  Defendant argues, however, that claim 1 and the remaining claims of the '471 Patent are directed to "abstract ideas," but there is nothing particularly "abstract" about the inventive processes laid out in the claims of the '471 Patent.  The claims are directed to concrete processes defined by a series of discrete and concrete steps performed by physical hardware.

As noted above, the question under prong 1 of the *Mayo/Alice* Test is not whether the claims involve or are related to some abstract concept.  The question under prong 1 of *Mayo/Alice* is whether the claims are merely "directed to" an abstract idea with nothing more.  The claims of the '471 Patent are not "directed to" any abstract idea, but rather to a new, useful and concrete process for monitoring a vehicle.  This finding concludes the analysis under the Mayo/Alice test, and the claims of the '471 Patent are therefore patent eligible. *Core Wireless*, 880 F.3d at 1361.

**VIII.   The 28 Claims of the '471 Patent Incorporate Many Inventive Concepts:**

The '471 Patent incorporates 28 claims.  Claims 1 and 15 are independent claims.

Claims 2-14 depend from claim 1, and claims 16-28 depend from claim 15.  Taken together, the

claims of the '471 Patent recite a wide range of processes and methods for remotely monitoring

vehicles, primarily in order to prevent unauthorized usage thereof.  Within the 28 claims of the

'471 Patent are a wide variety of inventive concepts.  These include, but are not limited to, the

inventive concepts found in the independent claims.

According to the specification and claims of the '471 Patent, the inventive processes

involve the discrete and tangible steps of detecting movement or activation of a vehicle,

transmitting a signal to a control center whenever movement or activation of the vehicle is

detected, transmitting information identifying the operator of the vehicle to the control center,

making a determination as to whether the information identifying the operator was received

within a time interval of the detected movement or activation of the vehicle, detecting the

presence of a landmark in the vicinity of the vehicle, and transmitting data identifying the

landmark and/or a location of the landmark to the control center.  *See* '471 Patent; First Amended

Complaint, ¶¶ 16-21.

The claimed inventive processes set forth in the independent claims of the '471 Patent

recite steps and limitations that are not disclosed in the prior art, and which provide demonstrable

functional advantages over the prior art.  The processes as described and claimed in the

independent claims of the '471 Patent do not simply involve tracking the movement or activation

of a vehicle.  The processes described and claimed also involve transmitting received operator

identification to a control center.  This functionality allows for the identified operator to be easily

compared to a database of authorized operators for that vehicle, which may be maintained and

updated at a central control center.  The claimed inventive processes further involve the detection

of a landmark in the vicinity of the vehicle. See '471 Patent; Amended Complaint, ¶¶ 24-28.

    With the benefit of the information described above, a determination can be made as to

whether or not the vehicle is in an authorized location, such as a loading dock.  Thus, a

determination can readily and efficiently be made at a central location as to (a) whether the

vehicle is in motion or activated, (b) whether it is under the control of an authorized operator and

(c) whether the vehicle is in an authorized location.  This inventive unified functionality is not

found in any prior art process.  The claimed inventive processes provide a technological

advantage, in that the data identifying authorized operators can be maintained and updated at a

central location.  The claimed inventive processes improve the operation of the network, to the

extent that data relating to authorized operators does not need to be transmitted to each vehicle

location. *See* '471 Patent; Amended Complaint, ¶¶ 27-29.

    While the independent claims of the '471 Patent incorporate inventive concepts, the

inventive concepts described and claimed by the '471 Patent are not limited to those set forth in

the independent claims.  The 26 dependent claims of the '471 Patent incorporate a variety of

inventive concepts not expressly recited within the independent claims.  Additional embodiments

of the claimed invention include additional steps even further defining and distinguishing the

inventive processes from the known prior art, and providing advantages over prior processes.

    In certain claimed embodiments, the process further includes various additional steps,

including the following:

1. Determining whether an operator identification was received prior to the detected
   movement or activation of the vehicle;

2. Determining whether a received operator identification is valid;

3. Setting an alarm condition in a case where a valid operator identification was not
   received prior to the detected movement or activation of the vehicle;

4. Setting an alarm condition when the determining indicates that an operator identification was not received within the time interval;

5. Transmitting location coordinates of the vehicle provided by a Global Positioning System receiver co-located with the vehicle;

6. Transmitting a beacon signal from the vehicle;

7. Receiving the beacon signal at a plurality of different locations;

8. Determining the location of the vehicle based on the beacon signal received at the plurality of different locations;

9. Transmitting operational information regarding the vehicle to the control center, wherein the operational information includes one or more of specifications of the vehicle, fluid levels in subsystems of the vehicle, vehicle subsystem fault codes and/or status codes, battery level, speed(s) of the vehicle, and velocities of the vehicle;

10. Receiving operator identification information via a reader at the vehicle, wherein the information is provided to the reader via a token; and

11. Receiving operator identification information via a reader at the vehicle, wherein the reader reads biometric information of the operator.

'471 Patent; Amended Complaint, ¶¶ 30-50.

The claimed embodiments incorporate other inventive variations, including:

1. Embodiments wherein the control center performs the step of determining the location of the vehicle;

2. Embodiments wherein the beacon signal includes one or both of the signal indicating movement or activation of the vehicle and a signal;

3. Embodiments wherein the steps of transmitting are performed by a radio communications device co-located with the vehicle, and a radio communications service provider that supports operation of the radio communications device indicates a location of the radio communications device to the control center;

4. Embodiments wherein the radio communications device is a cellular phone and the radio communications service provider is a cellular communications service provider;

5. Embodiments wherein the detection is performed by a Radio Frequency Identification transceiver at the vehicle and a Radio Frequency Identification tag at the landmark; and

6. Embodiments wherein the detection is performed by a Radio Frequency Identification transceiver at the landmark and a Radio Frequency Identification tag at the vehicle.

'471 Patent; Amended Complaint, ¶¶ 30-50.

Each of the above steps and limitations, in combination with the above-described inventive processes, goes beyond what was known in the prior art and what was well-understood, routine, and conventional at the time of the filing of the patent application.  Each of the above steps and limitations provides the opportunity for technological advantages over what was well-understood, routine and conventional at the time of the filing of the patent application.

## IX.    Defendant Has a Burden to Demonstrate the Invalidity of All Claims of the '471 Patent by Clear and Convincing Evidence:

As set forth above, a defendant seeking to dismiss a complaint via a motion under Rule 12(b)(6) generally faces a very high burden of proof.  A defendant seeking to dismiss a complaint based on patent invalidity faces an even higher burden.  In order to prevail on such a motion, the defendant must show, by *clear and convincing evidence*, that *each and every claim* of the asserted patent is invalid.  Defendant's Motion to Dismiss clearly fails to even come close to making such a showing.

In the context of §101 eligibility, the second step of Alice's two-step inquiry must be assessed according to the clear and convincing evidence standard. *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  As such, the second step – after accepting all of the complaint's factual allegations as true, and drawing all reasonable inferences in the patentee's favor – the movant must provide clear and convincing evidence that the claim limitations are merely "well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

15

Defendant's high burden is further compounded by the absence of any claim construction determination at this early stage. *See MyMail v. ooVoo*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). The Federal Circuit has repeatedly acknowledged the desirability and frequent necessity of resolving claim construction prior to determination of a claim's § 101 eligibility. *See MyMail*, 934 F.3d at 1379 (*citing Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012)); *accord Aatrix Software*, 882 F.3d at 1128-1130. Defendant suggests in its Motion that the claim term "transmitting" is synonymous with "communicating." Defendant also suggests in its Motion that the claim term "control center" is synonymous with "person of authority." Plaintiff disputes these assertions, and these types of disputes must necessarily be resolved before the patentability of the claims of the '471 Patent can be fully evaluated by the Parties and the Court.

On top of all of the above, the court is well-advised to consider that no fact discovery has been conducted at this early stage. It is widely-recognized that the underlying facts substantively affect a § 101 analysis. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts."; *see also Aatrix*, 882 F.3d at 1128.

As neither party has had the opportunity to conduct any fact discovery at this early stage, the many factual inquiries relating to the *Mayo/Alice* Test have not yet been fully addressed by the parties. *See Berkheimer*, 881 F.3d at 1369 ("[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."); *see also Aatrix Software*, 882 F.3d at 1128.

The need for thorough fact discovery is particularly true with respect to dependent claims. As noted, a defendant seeking to dismiss a complaint under Rule 12(b)(6) based on

Section 101 must provide clear and convincing evidence that each of the asserted dependent claims fails to provide an inventive concept, by showing that the additional features and limitation(s) of a dependent claim is/are something that is "well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367.

## X.    Defendant Has Clearly Not Met its Burden to Demonstrate the Invalidity of All Claims of the '471 Patent by Clear and Convincing Evidence:

As noted above, Defendant's Motion does not come even close to meeting its burdens under Rule 12(b)(6) and 35 U.S.C. 282.  In support of its argument that all claims of the '471 Patent are invalid by clear and convincing evidence, Defendant makes the following assertions:

1.  Claim 1 of the '471 Patent is Necessarily Representative of All of the Claims of the '471 Patent;

2.  Claim 1 of the '471 Patent is Focused on the "Abstract Idea" of Detecting, Transmitting and Processing Data to Monitor Vehicles;

3.  Claim 1 of the '471 Patent is Not Directed to any Specific Improvement in the Way a Computer Operates;

4.  Claim 1 of the '471 Patent Can be Carried Out Entirely by a Human; and

5.  Claim 1 of the '471 Patent Does Not Add "Significantly More" to the Abstract Idea of Detecting, Transmitting and Processing Data.

Plaintiff addresses each of these arguments in turn below.

### A.    Claim 1 of the '471 Patent is Not "Representative" of All of the Claims of the '471 Patent

In its first assertion, Defendant asserts that it can meet its burden to invalidate all claims of the '471 Patent by focusing on the first claim and ignoring all the recitations and limitations of the remaining 27 claims of the '471 Patent.  Specifically, Defendant asserts the following:

> As a threshold matter, the Court need only analyze Claim 1 of the '471 Patent ("the Representative Claim" or "Representative Claim 1") because it is representative of all claims. A representative claim may be used in analyzing patent eligibility under Section 101 where all of the claims are "substantially similar and linked to the same abstract idea."

As the Court will hopefully appreciate at the outset, Defendant's position on this point is self-evidently incorrect.  As noted above, the '471 Patent recites 28 separate claims.  Each of the 28 claims of the '471 Patent recites its own set of details and limitations.  It is often the case that certain claims of a patent may be found valid, while others may be found invalid.  This foundational rule is codified at 35 U.S.C. 282(a), which reads as follows:

> A patent shall be presumed valid. ***Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim***. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

(emphasis added).

If Defendant were content to seek invalidation of claim 1 of the '471 Patent specifically, Defendant's focus on claim 1 would perhaps be appropriate.  To the extent, however, that Defendant seeks to prove to this Court that *all* claims of the '471 Patent are invalid, Defendant has a burden to address each of the limitations of each of the claims of the '471 Patent, not simply one claim out of 28.

### B. Claim 1 of the '471 Patent is Not Merely Directed To the "Abstract Idea" of Detecting, Transmitting and Processing Data to Monitor Vehicles

In its second assertion, Defendant asserts that Claim 1 of the '471 is "focused on" the "abstract idea" of "detecting, transmitting and processing data to monitor vehicles."  Specifically, Defendant asserts the following:

> [Claim 1] does nothing more than use existing technology to (1) detect movement of a vehicle and the presence of a landmark near the vehicle; (2) transmit the detected information and the vehicle operator's identification to a control center; and (3) make a determination about whether the vehicle operator's identification was received within a prescribed time interval relative to the movement of the vehicle.

Defendant's Motion, p. 23.

There are a number of problems with Defendant's approach in this regard.  To begin with, Defendant engages in exactly the sort of oversimplification that the courts have repeatedly rejected as inappropriate.  As this court cautioned in the *Encoditech* case, "In performing step one of Alice, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, Civil Action No. SA-18-CV-1335-XR, at *3 (W.D. Tex. June 25, 2019) (quoting *Encoditech, LLC v. Qardio, Inc.*, C.A. No. 1:18-864, 2019 WL 2526725, at *2 (D. Del. June 19, 2019)).  Claim 1 of the '471 Patent recites a variety of details defining the claimed invention, as follows:

> 1. A method for monitoring a vehicle, comprising:
> detecting movement or activation of the vehicle;
> transmitting a signal indicating movement or activation of the vehicle, to a control center;
> transmitting any received operator identification information to the control center;
> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;
> detecting at the vehicle the presence of a landmark; and
> transmitting data identifying the landmark and/or a location of the landmark to the control center.

Inexplicably, Defendant ignores most of the language of claim 1 in order to artificially simplify the nature of claim 1.  Upon a plain reading of claim 1, it is clear that the claim incorporates more than the 3 allegedly "abstract" concepts identified by Defendants.

As set forth above, claim 1 is not "directed to" any "abstract idea."  Claim 1 is directed to a specific new and useful process for monitoring a vehicle using physical hardware and discrete, concrete steps performed by that physical hardware.  As such, claim 1 is directed to patentable subject matter under 35 U.S.C. § 101.  The remaining 27 claims of the '471 Patent recite

additional physical hardware and additional steps to the processes.  As noted, Defendant has a burden to prove, by clear and convincing evidence, that all the claims of the '471 Patent are unpatentable.  Defendant has not demonstrated that even claim 1 of the '471 Patent is unpatentable, and has not even attempted to address the separate and independent patentability of claims 2-28.

### C. The Process Recited in Claim 1 of the '471 Patent Can Improve the Manner in Which a Fleet Monitoring Network Operates

Defendant next asserts that claim 1 of the '471 Patent is not directed to improvements in the way a computer operates.  Defendant's assertion misses the point.  Claim 1 provides, in part, for a vehicle monitoring process by which operator authorization information can potentially be stored and maintained at a central location, rather than requiring continuous updates of a plurality of dispersed databases.  This feature represents a potential reduction in wireless bandwidth and storage space, and an improvement in efficiency.  These advantages alone represent improvements over a system by which a separate authorization database must be maintained within each vehicle.  Accordingly, Defendant's argument on this point does not demonstrate that claim 1 is unpatentable by clear and convincing evidence.  Yet again, Defendant has not even addressed the separate and independent patentability of claims 2-28.

### D. The Process Recited in Claim 1 of the '471 Patent Cannot Be Performed by a Single Human Being

Defendant asserts that claim 1 of the '471 Patent is not patentable because each of the steps set forth in claim 1 of the '471 Patent could theoretically be performed by a single human being:

> These steps can all be performed by a person, for example, a passenger on a bus. For as long as mass transportation has existed, a passenger on a bus could (1) detect the movement of the bus, (2) communicate that movement to a person of authority/person in control, (3) communicate the bus driver's identity to a person

of authority/person in control, (4) determine whether the bus driver's identification was provided within an acceptable time relative to the movement of the bus, (5) detect a landmark near the bus, and (6) communicate the identification of the landmark and the landmark's location to a person of authority/person in control.

As the court will likely note, the language employed by Defendant above is not the language employed in claim 1 of the '471 Patent. Claim 1 of the '471 Patent clearly does not recite any step of "communicating…movement to a person of authority." Claim 1 of the '471 Patent recites "transmitting a signal indicating movement or activation of the vehicle to a control center." Defendant simply assumes, without explanation, that the claim term "transmitting" must be construed as synonymous with the word "communicating." Defendant apparently assumes that the claim term "signal" can simply be ignored. Defendant provides no rational bases for either of these assumptions, and they are certainly not intuitive. Accordingly, the step of "transmitting a signal" cannot be performed by a human being alone, and the step of "transmitting data identifying the landmark" cannot be performed by a human being alone.

While a full construction of the claim terms is premature at this juncture, Plaintiff submits to the Court that the plain and ordinary meaning of "transmitting" is generally understood to be narrower and more specific than the word "communicating." The term "transmitting" is normally used in the context wherein one electronic component sends a signal and another electronic component receives a signal. It is common, for example, to speak of a human being "communicating with" another human being. It is not at all common, however, to speak of one human being "transmitting to" another human being. It is not at all clear how a human being could somehow "transmit" information to another human being at a remote location without the use of external devices. Thus, Plaintiff does not agree that "transmitting" is synonymous with "communicating," and finds no basis for such a construction. If Defendant

considers the claim term "transmitting" to be synonymous with the word "communicating," Defendant has the burden to prove that construction by clear and convincing evidence. Defendant has clearly not done so.

On a similar note, Defendant's argument also rests on the assumption that the claim term "control center" must be construed as being synonymous with the term "person of authority." This assumption is even less intuitive than the terms discussed above, as even the plain and ordinary meaning of these terms is clearly not the same. Defendant has provided no explanation or argument in support of this proposed construction. As above, if Defendant can prove that this term must be construed in the manner suggested, Defendant would perhaps have a point. Defendant has not done so, and certainly not by clear and convincing evidence.

In light of the above, Defendant's argument that all the recited steps of claim 1, including but not limited to the step of "transmitting a signal…to a control center" can be performed by a human being is obviously not correct. Even if all the steps of claim 1 of the '471 Patent could be performed by a human being, Defendant has not demonstrated, or even suggested, that all the steps of claims 2-28 could be performed in such manner.

E. **The Claims of the '471 Patent Add "Significantly More" Beyond Detecting, Transmitting and Processing Data:**

As a final argument, Defendant argues that Claim 1 incorporates no "additional features" beyond an "abstract idea":

> [Claim 1] does not recite any technology at all...[Claim 1] contains no "additional features" – inventive or otherwise – beyond the abstract idea itself...[Claim 1] recites only functional limitations that are tied to the monitoring of a vehicle that consists of the abstract steps of "detecting" information about the vehicle, "transmitting" that information, and making a "determination" about the information. Nothing else is claimed.

As set forth above, Claim 1 recites much more than an "abstract idea." Specifically, Claim 1 of the '471 Patent sets forth a new, useful and inventive process for monitoring vehicles. The process comprises a clearly-identified series of discrete and concrete steps for performance of the inventive process. Further, it is clear that the process is not taking place in some abstract realm.

The process claimed by the '471 Patent takes place in the tangible, physical world and involves tangible, physical elements. The process includes a variety of steps involving and relating to the physical, tangible world. The claimed process is for the monitoring of a physical, tangible vehicle. The physical, tangible vehicle has motion in the physical world, which can be detected. A signal is transmitted to a control center, indicating movement or activation of the physical vehicle. A landmark, at a physical location in the physical world, is detected. Data identifying the landmark or the location is transmitted to the control center. These are all tangible operations relating to physical locations and devices in the physical world, not mere abstract ideas.

Even if Claim 1 were understood as being directed to "abstract ideas," Claim 1 and the 27 other claims of the '471 Patent encompass a wide variety of inventive concepts, as described in Section VII above. Defendant seems to be arguing that Claim 1 is not patentable because of an insufficient number of operational components being explicitly identified within the claim. If the patentability of a claim is dependent on the recitation of operational components, then many of the dependent claims are clearly patentable under that rule. These dependent claims explicitly recite a "Global Positioning System receiver," a "radio communications device," a "cellular phone," a "Radio Frequency Identification transceiver" and a "Radio Frequency Identification tag."

## XI.    CONCLUSION

As set forth above, dismissal of a case under Rule 12(b)(6) is strongly disfavored in the Fifth Circuit, and is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim.  Under 35 U.S.C. § 282, the claims of a patent are presumed valid, and invalidity of any patent claim must be proven by clear and convincing evidence. Defendant has failed to present such a showing even with regard to claim 1 of the '471 Patent, and has failed to even address the patentability of claims 2-28, each of which must be evaluated on its own merits.  For the reasons set forth above, Defendant's Motion to Dismiss is properly denied.

Dated: March 22, 2024                    Respectfully Submitted,

By:  /s/ Kenneth Thomas Emanuelson
Kenneth Thomas Emanuelson
Texas State Bar No. 24012591
**THE EMANUELSON FIRM, P.C.**
17304 Preston Road, Suite 800
Dallas, Texas 75252
469-363-5808
Ken@Emanuelson.us

**ATTORNEY FOR PLAINTFF**
**RFC LENDERS OF TEXAS, LLC**


**CERTIFICATE OF SERVICE**

On the date set forth above, the undersigned electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/Kenneth T. Emanuelson/
Kenneth T. Emanuelson