**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **RFC LENDERS OF TEXAS, LLC**, | |
| Plaintiff, | Civil Action No.: 6:23-cv-00832-XR |
| v. | |
| **SMART CHEMICAL SOLUTIONS, LLC,** | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

**DEFENDANT SMART CHEMICAL SOLUTIONS, LLC'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  CLAIM 1 IS REPRESENTATIVE AND RFC FAILS TO SHOW OTHERWISE .......... 4

III. UNDER *ALICE* STEP ONE, THE CLAIMS OF THE '471 PATENT ARE DIRECTED TO AN ABSTRACT IDEA .......................................................... 5

   A.   RFC's Concessions Doom The '471 Patent .......................................... 6

   B.   RFC's Response Not Only Fails To Overcome A Finding That The '471 Patent Is Directed To A Patent-Ineligible Abstract Idea, But Actually Confirms Such A Finding ................................................................. 10

   C.   The Rest Of RFC's Arguments Regarding *Alice* Step One Are All Flawed ....... 11

      1.   RFC is Incorrect that Smart Chemical Oversimplified Representative Claim 1 .................................................... 11

      2.   The Method Recited in Claim 1 Does Not Improve the Manner in Which a Fleet Monitoring Network Operates ................................. 12

      3.   Contrary to RFC's Assertion, Claim 1 Can be Performed by a Human ....................................................................... 13

      4.   Alleged Novelty of the Claims is Irrelevant to the Abstract Idea Inquiry ..................................................................... 14

IV.  UNDER *ALICE* STEP TWO, THE CLAIMS OF THE '471 PATENT LACK AN INVENTIVE CONCEPT ......................................................................... 15

   A.   Representative Claim 1 Does Not Recite An Inventive Concept And RFC Fails To Show Otherwise .............................................................. 15

   B.   RFC Incorrectly Argues That The Presence Of "Physical Elements" Impacts The Section 101 Analysis ....................................................... 18

V.   THE REST OF RFC'S ARGUMENTS ARE ALL FLAWED ...................................... 20

VI.  RFC IGNORES EVERY CASE CITED BY SMART CHEMICAL ................................. 21

VII. CONCLUSION ................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)........................................................................9, 15

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
    No. 2022-2109, 2024 U.S. App. LEXIS 8042 (Fed. Cir. Apr. 4, 2024)...........................13, 16

*Alice Corp. Pty Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................................................ *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)..............................................................................21

*Atlas Global Techs., LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*,
    661 F. Supp. 3d 643 (W.D. Tex. 2023)...................................................6, 8, 9, 16

*Berkheimer v. HP, Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..............................................................................20

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018)..............................................................................20

*BSG Tech. LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)..............................................................................16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)..............................................................................19

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
    681 Fed. Appx. 950 (Fed. Cir. 2017)......................................................................9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)..............................................................................21

*Concaten, Inc. v. Ameritrak Sols., LLC*,
    131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 Fed. Appx. 571 (Fed. Cir. 2016).....9, 13, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)..................................................................4, 19, 20

*Contiguity, LLC v. Conduent Business Services, LLC*,
    No. 23-cv-00038-XR, Dkt. No. 27 (W.D. Tex. May 12, 2023)...................................... *passim*

*Credit Acceptance Corp. v. Westlake Servs.*,
   859 F.3d 1044 (Fed. Cir. 2017)..............................................................................11

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)..............................................................................19

*DigiMedia Tech., LLC v. ViacomCBS Inc.*,
   592 F. Supp. 3d 291 (S.D.N.Y. 2022).......................................................................5

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)....................................................................6, 12, 22

*Ficep Corp. v. Peddinghaus Corp.*,
   No. 2022-1590, 2023 U.S. App. LEXIS 21842 (Fed. Cir. Aug. 21, 2023) ............10

*First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*,
   389 F. Supp. 3d 456 (E.D. Tex. 2019)....................................................................19

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
   60 F.4th 1349 (Fed. Cir. 2023) .................................................................................5

*IBM v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir 2022) ................................................................................16

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
   839 Fed. Appx. 534 (Fed. Cir. 2021).........................................................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)...............................................................................20

*Morales v. Square, Inc.*,
   75 F. Supp. 3d 716 (W.D. Tex. 2014), *aff'd*, 621 Fed. Appx. 660 (Fed. Cir. 2015) ..............20

*PerformancePartners, LLC v. FlashParking, Inc.*,
   No. 23-cv-00130, 2023 U.S. Dist. LEXIS 183824 (W.D. Tex. Oct. 11, 2023)........................5

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ..................................................................................10

*Protegrity USA, Inc. v. Netskope, Inc.*,
   No. 15-cv-02515, 2015 U.S. Dist. LEXIS 142633 (N.D. Cal. Oct. 19, 2015) ......................21

*Sanderling Mgmt. v. Snap Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) ...................................................................................5

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..................................................................................7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
 873 F.3d 905 (Fed. Cir. 2017) ......................................................................9, 20

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
 873 F.3d 1364 (Fed. Cir. 2017) ...........................................................................4

*Surgetech, LLC v. Uber Techs. Inc.*,
 No. 22-cv-00882, 2023 U.S. Dist. LEXIS 195960 (D. Del. Nov. 1, 2023) .............................5

*Synopsys, Inc. v. Mentor Graphics Corp.*,
 839 F.3d 1138 (Fed. Cir. 2016) ..............................................................15, 16, 17

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
 657 Fed. Appx. 991 (Fed. Cir. 2016) ....................................................................10

*Teliax Tech. LLC v. Affinity Network, Inc.*,
 636 F. Supp. 3d 1199 (D. Nev. 2022) .....................................................................5

*In re TLI Commc'ns LLC Patent Litig.*,
 823 F.3d 607 (Fed. Cir. 2016) ........................................................................3, 18

*Trading Techs. Int'l, Inc. v. IBG LLC*,
 921 F.3d 1378 (Fed. Cir. 2019) ..........................................................................19

*Trinity Info Media, LLC v. Covalent, Inc.*,
 72 F.4th 1355 (Fed. Cir. 2023) ...............................................................10, 12, 14

*Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*,
 916 F.3d 1363 (Fed. Cir. 2019) .......................................................................7, 11

*Voip-Pal.com, Inc. v. Apple Inc.*,
 411 F. Supp. 3d 926 (N.D. Cal. 2019), *aff'd*, 828 Fed. Appx. 717 (Fed. Cir. 2020) ...........9, 12

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
 100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, 636 Fed. Appx. 1014 (Fed. Cir. 2016) .................19

*Yu v. Apple Inc.*,
 1 F.4th 1040 (Fed. Cir. 2021) .............................................................................5

## I.    INTRODUCTION

Plaintiff RFC Lenders of Texas, LLC's ("RFC") Response ("Response") to Defendant Smart Chemical Solution, LLC's ("Smart Chemical") Motion to Dismiss[1] ("the Motion") is one big red herring.[2]  RFC either ignores Smart Chemical's arguments, tacitly agrees with them, or makes its own "arguments" so summarily that they would more accurately be called unsubstantiated conclusions.  The Response creates no real dispute that the claims of the '471 Patent are directed to a patent-ineligible abstract idea and thus the Complaint fails to state a claim upon which relief can be granted.

*First*, RFC does not address several points in the Motion, and therefore concedes them. RFC does not refute that Representative Claim 1 merely recites generic, results-focused functions that a standard networked computer uses to detect, transmit and process data.  RFC also does not dispute that Representative Claim 1 fails to recite *any* computing components to perform the claimed generic functions.  Nor does RFC dispute that the specification of the '471 Patent shows that these claimed generic functions are performed using only conventional and well-known computer components.  RFC also does not refute that Representative Claim 1 fails to explain *how* any of the recited generic functions are performed.  The Motion can and should be granted for any one of these reasons.

---

[1] Smart Chemical's Motion to Dismiss (Dkt. No. 9); RFC's Response (Dkt. No. 17).

[2] RFC's Response argues only that its proposed Amended Complaint is sufficient to survive a motion to dismiss.  However, this Motion relates to the *original* Complaint.  The proposed Amended Complaint is not the operative pleading because RFC's motion for leave to file an Amended Complaint has not yet been ruled upon.  The present Motion should be granted for this reason alone – RFC has not argued that the original Complaint can pass muster under Section 101.  *See* Resp., Dkt. No. 17 at 10, 12, and 13-15 (RFC only discussing and citing to the proposed Amended Complaint).  Instead, RFC devoted its entire Response to arguing that the proposed Amended Complaint is sufficient.  (As an aside, it is not; Smart Chemical has opposed the motion for leave based on the futility of the proposed Amended Complaint).

**Second**, RFC inexplicably describes the "invention" in a way that actually supports a finding that it fails Step One of the *Alice* test, not the other way around.  The Response repeatedly states that the claims are allegedly patentable because they allow vehicles to be monitored "readily and efficiently."  Resp., Dkt. No. 17 at 5, 13.  RFC does not credibly dispute that a human could do this, and the Federal Circuit has repeatedly held that merely automating a process that can be done by a human is a textbook patent-ineligible abstract idea.

**Third**, RFC focuses much of its Response on arguing that the claims of the '471 Patent are not abstract under *Alice* Step One because they are allegedly novel over prior art systems.  But it is well-settled that a patent claim can be directed to something new[3] and still be directed to a patent-ineligible abstract idea.  Contrary to RFC's argument, the relevant inquiry at *Alice* Step One is identifying the basic concept at the heart of the claims.  Here, as explained in the Motion, Representative Claim 1 is directed to nothing more than performing the abstract idea of detecting, transmitting and processing data to monitor vehicles.

**Fourth**, in its treatment of *Alice* Step Two, RFC makes several missteps.  RFC baldly asserts that the claims of the '471 Patent contain a "wide variety of inventive concepts" because they "are not disclosed in the prior art."  Resp., Dkt. No. 17 at 12.  These statements are conclusory, and in any event, alleging that the claimed invention provides improvements over the prior art is not relevant to the Section 101 inquiry as noted above.  And even assuming *arguendo* that a novelty-type argument could be compelling here, one of the allegedly "inventive concepts" identified by RFC is not even recited in the claims and has been determined by the Federal Circuit in other similar cases to not be inventive.  RFC next argues that the claims cannot be abstract simply because the claimed process "takes place in the tangible, physical world and

---

[3] Smart Chemical does not concede that there is anything novel claimed in the '471 Patent.

involves tangible, physical elements." Resp., Dkt. No. 17 at 23. This is wrong. "It is well established that mere recitation of *concrete, tangible* components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (emphasis added). RFC's *Alice* Step Two analysis thus fails to save the claims of the '471 Patent.

     **Fifth**, RFC's Response is flawed for several additional, more general reasons all of which further support granting the Motion. For example, RFC urges the Court to defer consideration of Smart Chemical's Section 101 arguments based on highly generalized observations about burdens of proof, claim construction, and fact discovery that could be made in any patent case – and which did not stop this Court from properly granting a Section 101 motion to dismiss in *Contiguity v. Conduent Business Services*, invalidating claims that were very similar to the claims at issue here. As if that were not enough to discount these arguments, RFC fails to explain how its generalized observations apply in *this case*. RFC claims that there are claim construction issues that should prevent a ruling on a motion to dismiss, but the Response does not identify a single claim construction or fact dispute that actually impacts the eligibility analysis under Section 101.

     Finally, **sixth**, the Response ignores *every one* of the cases cited by Smart Chemical that support granting the Motion. RFC did not try to distinguish even one case where the Federal Circuit found that similar claims were directed to patent-ineligible abstract ideas, or this Court's ruling in *Contiguity v. Conduent Business Services*.

     In short, the claims recite generic, results-focused functions that are performed by conventional computing components. These are precisely the type of familiar class of claims related to detecting/collecting information, transmitting the information, and analyzing the

information via the use of conventional computing components that the Federal Circuit routinely

holds are directed to patent-ineligible abstract ideas.

RFC's Response does nothing to credibly counter Smart Chemical's Motion.  The

Motion should be granted and this case should be dismissed with prejudice.

## II.    CLAIM 1 IS REPRESENTATIVE AND RFC FAILS TO SHOW OTHERWISE

As a threshold matter, Claim 1 is representative here.  In its Motion, Smart Chemical

explained in a detailed claim-by-claim analysis that all 28 claims of the '471 Patent are directed

to the abstract idea of detecting, transmitting and processing data to monitor vehicles.  Mot., Dkt.

No. 9 at 14-16.  This is because Claim 1 as well as the remaining claims of the '471 Patent are all

"substantially similar and linked to th[is] same abstract idea."  *Content Extraction &*

*Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal

quotations and citations omitted); *see also Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873

F.3d 1364, 1368, n.7 (Fed. Cir. 2017) (ruling that "[b]ecause the relevant system claims and

method claims in the [patents-in-suit] contain only minor differences in terminology but require

performance of the same basic process, ... they should rise and fall together") (internal citations

and quotations omitted).

RFC fails to explain why Claim 1 is not representative; it only summarily asserts that

each of the 28 claims of the '471 Patent "recites its own set of details and limitations," and then

incorrectly asserts that if Smart Chemical intends to invalidate all of the claims of the '471

Patent, Smart Chemical has the "burden to address each of the limitations of each of the claims

of the '471 Patent."  Resp., Dkt. No. 17 at 18.

This argument fails for at least two reasons.  First, the concept of using a representative

claim to evaluate a Section 101 motion is common and widely accepted by district courts and the

Federal Circuit. *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 701, n.1 (Fed. Cir. 2023) (treating one claim as representative of all the claims at issue for Section 101 purposes).[4]

Second, RFC does not identify which "details and limitations" allegedly missing from Claim 1 but found in Claims 2-28 impact the Section 101 analysis. *See, e.g.*, *Sanderling Mgmt.*, 65 F.4th at 701, n.1 (holding that the court "may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim," "including by explaining how a limitation missing from a purportedly representative claim could make a material impact to the Section 101 analysis.").

Because Smart Chemical has explained in its opening brief why Claim 1 is representative of all the claims of the '471 Patent and RFC has failed to present any "meaningful argument" in response, the Court should treat Claim 1 as representative of all claims for the purposes of the Section 101 analysis.

## III. UNDER *ALICE* STEP ONE, THE CLAIMS OF THE '471 PATENT ARE DIRECTED TO AN ABSTRACT IDEA

Representative Claim 1 is directed to the abstract idea of detecting, transmitting and processing data to monitor vehicles. Mot., Dkt. No. 9 at 16-24. RFC's attempts to defeat Smart Chemical's Motion all fail.

---

[4] *See also Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1353, n.1 (Fed. Cir. 2023); *Yu v. Apple Inc.*, 1 F.4th 1040, 1042, n.1 (Fed. Cir. 2021); *PerformancePartners, LLC v. FlashParking, Inc.*, No. 23-cv-00130, 2023 U.S. Dist. LEXIS 183824, at *5-10 (W.D. Tex. Oct. 11, 2023); *Surgetech, LLC v. Uber Techs. Inc.*, No. 22-cv-00882, 2023 U.S. Dist. LEXIS 195960, *2-3 (D. Del. Nov. 1, 2023); *Teliax Tech. LLC v. Affinity Network, Inc.*, 636 F. Supp. 3d 1199, 1208 (D. Nev. 2022); *DigiMedia Tech., LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 299, n.3 (S.D.N.Y. 2022).

A.    **RFC's Concessions Doom The '471 Patent**

As an initial matter, RFC failed to refute, and thus has now conceded[5] at least three points

set forth in Smart Chemical's Motion, which are fatal to its opposition.

*First*, Smart Chemical's Motion explained in detail that Representative Claim 1 (and thus

all the claims of the '471 Patent) is abstract because it recites nothing more than basic results-

focused *functions* for detecting, transmitting and processing data to monitor vehicles and that

claims directed to such purely functional terms without more fall squarely into "a familiar class

of claims 'directed to' a patent-ineligible concept.'"  *Elec. Power Grp., LLC v. Alstom S.A.*, 830

F.3d 1350, 1351-54 (Fed. Cir. 2016); *see also* Mot., Dkt. No. 9 at 20-22.  Representative Claim 1

recites: (1) "*detecting* movement or activation of the vehicle," (2) "*transmitting* a signal

indicating movement or activation of the vehicle to a control center," (3) "*transmitting* any

received operator identification information to the control center," (4) "*determining* whether an

operator identification was received within a time interval of the detected movement or

activation of the vehicle," (5) "*detecting* at the vehicle the presence of a landmark," and (6)

"*transmitting* data identifying the landmark and/or a location of the landmark to the control

center."  '471 Patent, Dkt. No. 1-1 at 6:18-29 (emphasis added); Mot, Dkt. No. 9 at 20.

RFC's Response does not refute and thus concedes that the claimed actions of

"detecting," "transmitting," and "determining," are nothing more than generic, results-focused

functions for carrying out a conventional way to monitor vehicles.[6]  This concession alone

dooms RFC's position.  *See*, *e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352-55 (holding claims

directed to "receiving data," "detecting and analyzing events" from the received data, and

---

[5] *See*, *e.g.*, *Atlas Global Techs., LLC v. OnePlus Tech. (Shenzen) Co., Ltd.*, 661 F. Supp. 3d 643, 652 (W.D. Tex. 2023) (ruling that a point not addressed in a responsive brief was conceded).

[6] *See Atlas Global Techs.*, 661 F. Supp. 3d at 652.

"displaying the event analysis results" using "off-the-shelf, conventional computer, network, and display technology" were directed to the patent-ineligible abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis").[7]

Put simply, because Representative Claim 1 is described in "'purely functional terms,' without explaining 'specific improvement[s] to the way computers operate,'" it is "directed to [an] abstract idea[]." *Contiguity, LLC v. Conduent Business Services, LLC*, No. 23-cv-00038-XR, Dkt. No. 27, Slip Op. at 7 (W.D. Tex. May 12, 2023) (J. Rodriguez) (quoting *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1368).

**Second**, Representative Claim 1 does not recite or reference *any components* for practicing the aforementioned generic functions and therefore it does not cover an improvement to computer components. Mot., Dkt. No. 9 at 18-20. The specification reveals that the claimed generic functions of Representative Claim 1 are all accomplished using conventional computing components, as illustrated in the table below:

| Claimed Function | Generic Computing Component Performing the Claimed Function |
|---|---|
| (1) detecting movement or activation of a vehicle, | "a motion sensor, a shock sensor, or … [a]ny device, signal or indication of entry or tampering with the vehicle" to detect movement or activation of a vehicle ('471 Patent, Dkt. No. 1-1 at 1:51-60), |
| (2) transmitting information indicating movement or | "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or instrument console of the vehicle, and so forth" to transmit information |

---

[7] *See also iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 537 (Fed. Cir. 2021) (holding that claims directed to a system for detecting movement of an object using acceleration data from a sensor were directed to the patent-ineligible abstract idea of "gathering, processing and transmitting data"); *Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (finding claims for "receiving physiologic treatment data" from bedside machines, "converting" the data, "performing at least one programmatic action," and "presenting" the data were directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data" and patent-ineligible under Section 101); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (holding claims for "selecting" data, "performing" statistical analysis, and "provid[ing] a report of the analysis were directed to the patent-ineligible abstract idea of "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis").

| Claimed Function | Generic Computing Component Performing the Claimed Function |
|---|---|
| activation of the vehicle, | indicating movement or activation of the vehicle (*id.* at 4:61-65), |
| (3) transmitting any received operator identification information, | "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or instrument console of the vehicle, and so forth" to transmit any received operator identification information (*id.* at 4:61-65),<br><br>"operator identification information" is described by the '471 Patent as "any proffered operator identification information" such as a "credit card, a proximity tag, a radio frequency identification tag, or other token or device that can be used to present identification or authentication information" (*id.* at 1:66-2:6), "biometric identification such as a fingerprint, a retinal pattern, a voice or speech sample, or any other biometric measure or combination of measures" (*id.* at 2:11-14), and "alphanumeric or other identification code" (*id.* at 2:18-20), |
| (4) determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle, | "one or more computers and/or microprocessors or other computing machines or capacities to support the functions described herein" including determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle (*id.* at 4:46-49), |
| (5) detecting the presence of a landmark at the vehicle, and | a reader, "for example a radio frequency identification reader" to detect the presence of a landmark at the vehicle (*id.* at 4:65-5:1), and |
| (6) transmitting data identifying the landmark and/or the location of the landmark. | "different kinds of transmitters, including for example a service hat transmitter, a hard wired transmitter, a transmitter located in a dash or instrument console of the vehicle, and so forth" to transmit information identifying the landmark and/or the location of the landmark (*id.* at 4:61-65). |

RFC does not refute and therefore concedes that Representative Claim 1 fails to recite *any* components for carrying out these generic functions, or that the specification confirms these claimed generic functions are all accomplished using conventional computing components that were well known at the time of the claimed invention.[8]  These concessions confirm that Representative Claim 1 is not directed to any new computer components.  This is fatal to RFC's

---

[8] *See Atlas Global Techs.*, 661 F. Supp. 3d at 652.

position because a hallmark of an abstract idea is a claim that does not recite any new computer

components.  *See, e.g.*, *Concaten, Inc. v. Ameritrak Sols., LLC*, 131 F. Supp. 3d 1166, 1174-75

(D. Colo. 2015), *aff'd without opinion*, 669 Fed. Appx. 571 (Fed. Cir. 2016); *Secured Mail Sols.*

*LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017).

  ***Third***, Smart Chemical's Motion also explained that Representative Claim 1 is abstract

for the independent reason that it does not recite any specific implementation of the abstract idea

because it fails to state *how* any of the recited actions are accomplished by the conventional

computer and network components.  Mot., Dkt. No. 9 at 22-23.  As one example, Representative

Claim 1 requires "determining whether an operator identification was received within a time

interval of the detected movement or activation of the vehicle," but it fails to specify *any* specific

"determining" technique – it does not say how the processing is done.  RFC does not refute this

point in its Response and thus it too is conceded.[9]  But concession or not, this is independently

fatal to RFC's opposition.  *See, e.g.*, *Voip-Pal.com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 955

(N.D. Cal. 2019) (finding claims that "contain[] no instructions for how each step of the [claimed

process] is accomplished" and instead "simply require[] the functional results of 'receiving,'

'processing,' and 'classifying' were directed to a patent-ineligible abstract idea), *aff'd without*

*opinion*, 828 Fed. Appx. 717 (Fed. Cir. 2020).[10]  In short, Representative Claim 1 recites only

"the *what* of the invention, but none of the *how* that is necessary to turn the abstract ideas into a

---

[9] *See Atlas Global Techs.*, 661 F. Supp. 3d at 652.

[10] *See also Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir.
2017) ("[A] method for collection, analysis, and generation of information reports, where the
claims are not limited to how the collected information is analyzed or reformed, is the height of
abstraction."); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir.
2016) (taking action "through the use of conventional devices, without offering any
technological means of effecting that concept" indicates that the claims are directed to an
abstract idea).

patent-eligible application." *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 Fed.

Appx. 991, 993 (Fed. Cir. 2016) (emphasis in original).

> **B.** **RFC's Response Not Only Fails To Overcome A Finding That The '471 Patent Is Directed To A Patent-Ineligible Abstract Idea, But Actually Confirms Such A Finding**

RFC's Response repeatedly asserts that the claims of the '471 Patent are directed to

patent-eligible subject matter because "[u]sing the processes described in and claimed by the

'471 Patent, a determination can *readily and efficiently* be made at a central location as to (a)

whether a vehicle is in motion or activated, (b) whether a vehicle is under the control of an

authorized operator and (c) whether the vehicle is in an authorized location," which is allegedly

directed to a "new and useful process[] for monitoring the status and locations of vehicles."

Resp., Dkt. No. 17 at 5 (emphasis added); *see also id.* at 13.

RFC appears to acknowledge that the alleged improvement of the '471 Patent is the

ability to automate the process of monitoring vehicles – a process previously performed by

humans – and to allegedly do so more efficiently. The Federal Circuit has said time and again

that merely automating a process that can be performed by humans, by instead performing that

process using conventional computer and network components, is a textbook patent-ineligible

abstract idea. *See, e.g.*, *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 U.S. App.

LEXIS 21842, at *7-9 (Fed. Cir. Aug. 21, 2023) (finding that claims directed to "automating a

previously manual process" were invalid under Section 101 as directed to a patent-ineligible

abstract idea); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-62 (Fed. Cir. 2023)

(affirming the district court's finding that claims "using generic computer components as tools to

perform the functions faster than a human would" were invalid under Section 101 as directed to a

patent-ineligible abstract idea); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318

(Fed. Cir. 2021) (finding claims that "focus on mere automation of manual processes using

10

generic computers" were invalid under Section 101 as directed to a patent-ineligible abstract idea); *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367 (holding claims that "seek[] to automate 'pen and paper methodologies' to conserve human resources and minimize errors" are invalid under Section 101); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (holding that the "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology" and ruling that the asserted claims were invalid under Section 101 because "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.").

The '471 Patent falls squarely into this familiar class of abstract ideas under *Alice* Step One and RFC's Response presents no evidence the contrary. This is but another reason Representative Claim 1 (and the rest of the claims of the '471 Patent) are directed to a patent-ineligible abstract idea.

### C.    The Rest Of RFC's Arguments Regarding *Alice* Step One Are All Flawed

Putting aside that RFC's own Response confirms that the claims of the '471 Patent are directed to a patent-ineligible abstract idea, all of RFC's other arguments to the contrary are also flawed.

### 1.    RFC is Incorrect that Smart Chemical Oversimplified Representative Claim 1

RFC argues that Smart Chemical improperly oversimplified the claims by ignoring certain claim elements. Resp., Dkt. No. 17 at 19. This is incorrect.

RFC baldly asserts that Smart Chemical's definition of the abstract idea must be wrong because Smart Chemical "ignores most of the language of claim 1 in order to artificially simplify the nature of claim 1." Resp., Dkt. No. 17 at 19. But this is of no moment; the Federal Circuit has repeatedly held that the abstract idea need not recite the limitations of the claims. *See*, *e.g.*,

*Trinity Info Media*, 72 F.4th at 1361 (distilling lengthy claims down to the abstract idea of "matching based on questioning"); *Voip-Pal.com*, 411 F. Supp. 3d at 968, *aff'd*, 828 Fed. Appx. 717 (Fed. Cir. 2020) (holding lengthy claims were directed to the abstract idea of "routing a communication based on characteristics of the participants"); *Elec. Power Grp.*, 830 F.3d at 1353-54 (holding lengthy claims were directed to the abstract idea of "collecting information, analyzing it, and displaying certain results"); *see also Contiguity*, No. 23-cv-00038-XR, Dkt. No. 27, Slip Op. at 8 (distilling lengthy claims down to the abstract idea of "collecting, analyzing, and displaying data").

The claims as a whole are "directed to" the abstract idea of detecting, transmitting and processing data to monitor vehicles. Mot., Dkt. No. 9 at 17-18. This is not an oversimplification and is all that must be determined for them to fail *Alice* Step One. *See Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).

  2. <u>The Method Recited in Claim 1 Does Not Improve the Manner in Which a Fleet Monitoring Network Operates</u>

RFC erroneously asserts that Representative Claim 1 provides for "a vehicle monitoring process by which operator authorization information can potentially be stored and maintained at a central location," which "represents a potential reduction in wireless bandwidth and storage space, and alleged improvement in efficiency." Resp. Dkt. No. 17 at 20. This argument is flawed for at least two reasons.

*First*, Representative Claim 1 does *not* recite storing or maintaining operator authorization information at a central location. This alone is fatal to RFC's argument because when assessing claims under *Alice* Step One courts are to "evaluate whether the *claims* 'focus on a specific means or method[].'" *Contiguity*, No. 23-cv-00038-XR, Dkt. No. 27, Slip Op. at 6 (emphasis added) (citing *Secured Mail Sols.*, 873 F.3d at 909).

*Second*, the Federal Circuit has already ruled that simply storing data in a centralized location is not an improvement in computer functionality that can prevent a finding of abstractness under Section 101. *See, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, No. 2022-2109, 2024 U.S. App. LEXIS 8042, at *8 (Fed. Cir. Apr. 4, 2024) (affirming District Court finding that the claimed advance of "selectively accessing user-requested data, remotely, that is stored in a centralized storage location" was not "directed to improvements in computer functionality"). The '471 Patent does not claim a novel database, nor does RFC allege that it does.

RFC's argument that Representative Claim 1 improves the manner in which a fleet monitoring network operates must therefore fail.

            3.    Contrary to RFC's Assertion, Claim 1 Can be Performed by a Human

RFC incorrectly asserts that a human cannot perform the process of Representative Claim 1 because humans cannot literally "transmit" a "signal." Resp., Dkt. No. 17 at 21-22.

RFC misses the point. A human does not have to be able to literally perform the exact claimed steps for the claims to be directed to a patent-ineligible concept. Rather, all that must be shown is that a human can perform the corollary, pre-computer age version of the claimed method. Indeed, the Federal Circuit has previously affirmed a finding that a claimed method involving the transmission of information was directed to a patent-ineligible abstract because the claimed method was "nothing more than taking steps routinely performed by humans … and applying them on a computer through unexplained 'processing of data.' *Concaten*, 131 F. Supp. 3d at 1175, *aff'd without opinion*, 669 Fed. Appx. 571 (Fed. Cir. 2016). Likewise, this Court recently determined that a claimed method reciting "generating a citation signal" and "attempting to transmit the citation signal" was directed to a patent-ineligible abstract idea because the asserted patent "is focused on the abstract concept of collecting and analyzing data, and merely

mechanizes concepts capable of resolution by the human brain." *Contiguity*, No. 23-cv-00038-XR, Slip Op. at 6. RFC's argument should be rejected.

RFC also argues that Smart Chemical's example of a bus passenger performing the claimed invention raises claim construction issues because of the choice of words used in the example. Resp., Dkt. No. 17 at 21-22. This argument is misplaced. Smart Chemical did not provide constructions for any claim terms and instead merely provided a pre-computer age corollary for showing how a human could perform pre-computer age steps similar to the claimed method. Smart Chemical does not assert that "transmitting" means "communicating." Again, Smart Chemical merely provided a pre-computer age corollary for which a human could perform similar steps as the claimed method to monitor a vehicle. There is no present claim construction dispute over the claim term "transmitting" (or any term for that matter). RFC's contrived claim construction dispute regarding the claim term "control center" is similarly without merit. That argument should likewise be rejected.

4.    <u>Alleged Novelty of the Claims is Irrelevant to the Abstract Idea Inquiry</u>

RFC repeatedly and incorrectly argues that the claims are non-abstract because they recite steps and limitations that are not disclosed in the prior art. Resp. Dkt. No. 17 at 5, 10, 12, 13, 15.

This argument reads more like it is attempting to trumpet the claims' novelty or nonobviousness over the prior art rather than advance the argument that the claims are not directed to an abstract idea. This is the wrong focus because "a claim for a *new* abstract idea is still an abstract idea." *Trinity Info Media*, 72 F.4th at 1363 (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016)) (emphasis in original). Accordingly, this argument should be rejected as irrelevant.

IV.    **UNDER *ALICE* STEP TWO, THE CLAIMS OF THE '471 PATENT LACK AN INVENTIVE CONCEPT**

The Supreme Court has described *Alice* Step Two "as a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (internal quotations omitted).  In applying Step Two, "the court looks to see whether there are any 'additional features' *in the claims* that constitute an 'inventive concept,' thereby rendering the claims eligible for patenting even if they are directed to an abstract idea.  Those additional features must be more than well-understood, routine, conventional activity." *Affinity Labs*, 838 F.3d 1253, (Fed. Cir. 2016) (emphasis added).

RFC's alleged inventive concepts are nothing more than the same abstract ideas identified at Step One, and its arguments are not compelling.

A.    **Representative Claim 1 Does Not Recite An Inventive Concept And RFC Fails To Show Otherwise**

RFC fails to show that Representative Claim 1 recites an inventive concept for at least three reasons.

*First*, RFC regurgitates the claim language from Representative Claim 1 and baldly concludes that it passes *Alice* Step Two simply because the "recite[d] steps and limitations … are not disclosed in the prior art."  Resp., Dkt. No. 17 at 12.  This exact argument was squarely rejected by the Federal Circuit in *Synopsys*:

> Synopsys equates the inventive concept inquiry with novelty and contends that the Asserted Claims contain an inventive concept because they were not shown to have been anticipated by (35 U.S.C. § 102) or obvious over (35 U.S.C. § 103) the prior art.  … That position misstates the law.  It is true that the § 101 patent-eligibility inquiry and, say the § 102 novelty inquiry might sometimes overlap.  But, a claim for a *new* abstract idea is still an abstract idea.  The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty.

*Synopsys*, 839 F.3d at 1151 (internal quotations and citations omitted) (emphasis in original). This argument fails to show that Claim 1 recites an inventive concept and therefore it should be rejected.

Indeed, Representative Claim 1 does not recite any technological improvement. Rather, as explained in the Motion and above, Claim 1 merely recites generic results-focused functions that a standard networked computer uses to detect, transmit and process data. Mot., Dkt. No. 9 at 24-26; *see also BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claims' only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). RFC fails to refute this, and therefore concedes it.[11] Whether conceded or not, it cannot credibly be disputed that "detecting," "transmitting," and "determining" are generic computing functions. *See Contiguity*, No. 23-cv-00038-XR, Dkt. No. 27, Slip Op. at 8.

**Second**, RFC asserts that the "claimed inventive processes provide a technological advantage, in that the data identifying authorized operators can be maintained and updated at a central location." Resp., Dkt. No. 17 at 13. But maintaining and updating authorized operator data at a central location is not recited in the claims, and thus is irrelevant to the Section 101 analysis. *See*, *e.g.*, *IBM v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir 2022) ("We evaluate whether the *claims* disclose additional features . . . that constitute an inventive concept and that are more than well-understood, routine, conventional activity.") (emphasis added) (internal citations omitted). And even if this concept was in the claims, the Federal Circuit has already determined that storing data at a central location is not an inventive concept. *See*, *e.g.*, *AI*

---

[11] *See Atlas Global Techs.*, 661 F. Supp. 3d at 652.

*Visualize*, No. 2022-2109, 2024 U.S. App. LEXIS 8042, at *8 (finding claims directed to storing data in a centralized storage location invalid as directed to patent-ineligible subject matter).

**Third**, RFC regurgitates the claim language from each of the 26 dependent claims in bullet point fashion and baldly concludes that they "incorporate a variety of inventive concepts" "even further defining and distinguishing the inventive processes from the known prior art." Resp., Dkt. No. 17 at 13-15. This argument is flawed for at least two reasons. First, again, arguments regarding novelty and nonobviousness over the prior art are not relevant to the Section 101 analysis. *See Synopsys*, 839 F.3d at 1151. Second, as explained in the Motion, the dependent claims merely provide: (1) additional generic steps for accomplishing the claimed method for monitoring vehicles, or (2) additional generic components that perform their basic functions. Mot., Dkt. No. 9 at 15-16. That is, nothing in these claims show or suggest an inventive concept and RFC's conclusory assertions to the contrary should be rejected.

To the extent RFC relies on the components recited in the dependent claims to support its argument, that strategy should be rejected because the Court only needs to evaluate Representative Claim 1. In any event, the components RFC identifies as encompassing inventive concepts were all well-known and conventional components at the time the '471 Patent was filed, and the specification confirms this:

- "Global Positioning System receiver": "Systems are presently available to automatically provide the present location of a truck to a communication or dispatch center, whereby a location of the truck provided by an on-board Global Positioning System (GPS) receiver is provided to the communication or dispatch center via radio transceiver mounted on the truck." ('471 Patent, Dkt. No. 1-1 at 1:18-23);

- "Radio communications device / cellular phone": "the radio communications device is a cellular phone" (*id.* at 6:64-67);

- "Radio Frequency Identification transceiver":  when describing a generic "token reader" the specification states "[t]he reader can include, for example, a radio frequency identification (RFID) reader … or any other reader capable of or arranged to receive information from the token presented by the operator" (*id.* at 2:1:11); and

- "Radio Frequency Identification tag":  when describing a generic "token" the specification states that the token may be, for example, "a radio frequency identification tag, or other token or device that can be used to present identification or authentication information to the monitoring system" (*id.* at 2:1:11).

RFC has not identified any inventive concepts.  Representative Claim 1 must fail *Alice* Step Two and is ineligible under Section 101.

### B.     RFC Incorrectly Argues That The Presence Of "Physical Elements" Impacts The Section 101 Analysis

To satisfy *Alice* Step Two, RFC argues that the claims of the '471 Patent "take place in the tangible, physical world and involve[] tangible physical elements." Resp., Dkt. No. 17 at 23. RFC further asserts that the claimed process includes a variety of steps involving and relating to the physical, tangible world, such as the monitoring of a physical, tangible vehicle.  *Id.*

RFC's focus on the "tangible, physical world" is legally irrelevant and has no impact on the patent eligibility analysis.  "It is well-settled that mere recitation of *concrete, tangible* components is insufficient to confer patent eligibility to an otherwise abstract idea."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 613 (emphasis added).  As the Supreme Court stressed

in *Alice*, whether a claim requires a physical device is "beside the point." *Alice*, 573 U.S. at 214,

224 ("All of the claims are implemented using a computer" and the "fact that a computer

necessarily exists in the physical, rather than purely conceptual, realm is . . . beside the point.")

(quotation marks and brackets omitted).

Indeed, virtually every claim found to be patent ineligible has some "physical"

manifestations. *See*, *e.g.*, *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366

(Fed. Cir. 2020) (finding claims reciting generic computer components, including a

programmable receiver unit, a storage device, a remote server and a processor, were invalid

under Section 101); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 763 (Fed. Cir. 2019)

(claims reciting "charging stations for electric vehicles," found to be invalid under Section 101);

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019)  (claims reciting

"electronic trading screen," found to be invalid under Section 101); *Content Extraction &*

*Transmission*, 776 F.3d at 1348 (claims reciting "use of a generic scanner and computer," found

to be invalid under Section 101); *First-Class Monitoring, LLC v. United Parcel Serv. of Am.,*

*Inc.*, 389 F. Supp. 3d 456, 459-60 (E.D. Tex. 2019) (claims reciting "a data collection device"

and "a remote receiving device," but found to be invalid under Section 101); *Concaten*, 131 F.

Supp. 3d 1166, 1169 (D. Colo. 2015), *aff'd*, 669 F. Appx. 571 (Fed. Cir. 2016) (claims reciting

"computer based system" that "monitor[s] current/real-time data from vehicles in the field,"

found to be invalid under Section 101); *Wireless Media Innovations, LLC v. Maher Terminals,*

*LLC*, 100 F. Supp. 3d 405, 409 (D.N.J. 2015), *aff'd*, 636 Fed. Appx. 1014 (Fed. Cir. 2016)

(claims reciting "computerized system for monitoring and recording location and load status of

shipping containers relative to a facility," found to be invalid under Section 101).

The claims of the '471 Patent cannot be saved at *Alice* Step Two.  RFC's arguments should be rejected.

## V.    THE REST OF RFC'S ARGUMENTS ARE ALL FLAWED

RFC advances a series of generalized arguments in an attempt to avoid having this case dismissed at the pleadings stage.  Resp., Dkt. No. 17 at 15-16.  To be sure, in some cases (but not this one), subsidiary factual disputes may impact Step Two of the *Alice* inquiry.  *See*, *e.g.*, *Berkheimer v. HP, Inc.,* 881 F.3d 1360, 1368 (Fed. Cir. 2018).  *Berkheimer* recognized that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," which "has in many cases been resolved on motions to dismiss." *Id.*  It stressed that "[n]othing in this decision should be viewed as casting doubt on the propriety of those cases." *Id.*  Indeed, in denying HP's petition for rehearing *en banc*, five members of the Federal Circuit (including all three panel judges), recognized "[i]n a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine [factual] dispute." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1371 (Fed. Cir. 2018).

Where, as here, the *claims* on their face require no technology and even the specification "merely provide[s] a generic environment in which to carry out the abstract idea," there is no need for the Court to search beyond the intrinsic record to determine whether the claims are invalid under Section 101.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016) (citation omitted); *see also Secured Mail Sols.*, 873 F.3d at 912 ("[T]his court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for extraneous fact finding outside the record.") (internal quotation marks and citation omitted); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Morales v. Square,*

*Inc.*, 75 F. Supp. 3d 716, 721-22 (W.D. Tex. 2014), *aff'd*, 621 Fed. Appx. 660 (Fed. Cir. 2015) ("Given the absence of [any] dispute [requiring resolution] and the 'salutary effects' of addressing § 101 at the outset of litigation, the Court finds that neither separate claim construction proceedings nor further development of the factual record is required before addressing the § 101 issue.") (citation omitted).  Critically, RFC has not identified a single factual dispute that would impact the eligibility analysis under Section 101.

RFC also urges the Court to defer ruling until after claim construction, but fails to identify any claim term or construction that impacts the Section 101 analysis.  Resp., Dkt. No. 17 at 16.  RFC has not: (i) identified any claim term that needs to be construed, (ii) proposed any claim constructions for such terms, (iii) explained how claim construction might alter the Court's analysis, nor (iv) articulated why the Court will fail to understand the claimed subject matter if it does not first construe the claims.  *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (motion to dismiss appropriately granted where patentee provided no proposed construction that would change the Section 101 analysis); *Protegrity USA, Inc. v. Netskope, Inc.*, No. 15-cv-02515, 2015 U.S. Dist. LEXIS 142633, at *7 (N.D. Cal. Oct. 19, 2015) ("[W]here a patentee fails to 'explain which terms require construction or how the analysis would change' were those constructions adopted, the Court may rule on the validity challenge prior to construing claims.") (collecting cases).  RFC's manufactured claim construction dispute regarding the claim terms "transmitting" and "control center" is insufficient to show how the construction of these terms may alter the Court's Section 101 analysis.

## VI.    RFC IGNORES EVERY CASE CITED BY SMART CHEMICAL

There are multiple Federal Circuit cases that have found claims remarkably similar to the claims of the '471 Patent to be directed toward patent ineligible subject matter.  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("[T]he decisional

21

mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen – what prior cases were about, and which way they were decided."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (comparing claims to claims in other cases and citing to multiple cases performing claim comparisons).[12] It is telling that RFC does not address any of the cases discussed in Smart Chemical's Motion, let alone try to distinguish them.[13]  The Court should follow these Federal Circuit decisions as well as its own prior ruling to invalidate the '471 Patent's similar claims.

## VII.    CONCLUSION

The Court would be hard pressed to find a case better positioned for a Section 101 determination on the pleadings than this case.  The claims of the '471 Patent are written in plain English.  They are easy to read and understand.  The specification is short and accessible, with two figures and less than three pages of text.  Beyond the claims and specification, there is nothing else the Court needs to resolve the threshold question of patent eligibility.  The Complaint (and proposed First Amended Complaint) contains no allegations that bear on the Section 101 analysis.

For the reasons set forth above and in Smart Chemical's Motion, Smart Chemical respectfully requests the Court to grant its Motion and dismiss this case with prejudice.

---

[12] These similar cases are set forth in the Motion on pages 20-21.

[13] In particular, RFC's Response does not address any of the cases cited in Smart Chemical's Motion on pages 20-21.

Dated:  April 19, 2024

Respectfully submitted,

**KELLEY DRYE & WARREN LLP**

_____/s/ Michael J. Zinna_____

Michael J. Zinna (admitted in W.D. Tex.)
Vincent M. Ferraro (admitted in W.D. Tex.)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone:  (973) 503-5900
Facsimile:  (973) 503-5950
Email:  MZinna@KelleyDrye.com
Email:  VFerraro@KelleyDrye.com

*Attorneys for Defendant*
*Smart Chemical Solutions, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 19, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court for the U.S. District Court for the Western District of Texas, using the electronic case filing system of the Court, which will effect service of the foregoing on all parties of record.

<u>    /s/ <i>Michael J. Zinna</i>                    </u>
Michael J. Zinna
