IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| RFC LENDERS OF TEXAS, LLC, *Plaintiff* | § § § § § § § § § | W-23-CV-00832-XR |
| -vs- | | |
| SMART CHEMICAL SOLUTIONS, LLC, *Defendant* | | |

### ORDER

On this date, the Court considered Defendant's motion to dismiss Plaintiff's complaint (ECF No. 9), Plaintiff's response (ECF No. 17), and Defendant's reply (ECF No. 25). In addition, the Court considered Plaintiff's motion for leave to file an amended complaint (ECF No. 15), Defendant's response (ECF No. 26), and Plaintiff's reply (ECF No. 27). After careful consideration, the Court issues the following order.

### BACKGROUND

Plaintiff RFC Lenders of Texas, LLC ("RFC") is the assignee of U.S. Patent No. 7,430,471 (the "'471 Patent"). ECF No. 1 ¶ 13. The '471 Patent, entitled "Method and System for Monitoring a Vehicle," concerns "a method and system for monitoring a vehicle" so that "the vehicle can be monitored with regard to many different functions and appropriately controlled." ECF No. 1-1 ("'471 Patent") at 1:13-16. Though the '471 Patent acknowledges that "[s]ystems are presently available to automatically provide the present location of a truck to a communication or dispatch center," it states that "[m]aintaining some control over monitored vehicles . . . would be of great value to the industry." *See id.* at 1:18-25.

1

Claim 1, which is representative of all the claims of the '471 Patent, as discussed *infra*, reads:

> 1. A method for monitoring a vehicle, comprising:
>
> detecting movement or activation of the vehicle;
>
> transmitting a signal indicating movement or activation of the vehicle, to a control center;
>
> transmitting any received operator identification information to the control center;
>
> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;
>
> detecting at the vehicle the presence of a landmark; and
>
> transmitting data identifying the landmark and/or a location of the landmark to the control center.

*Id.* at 6:18-29.

On December 6, 2023, RFC brought a sole claim of patent infringement against Defendant Smart Chemical Solutions, LLC ("Smart Chemical"), an oil and gas chemical supplier, alleging infringement of the '471 Patent and seeking monetary and injunctive relief. *See* ECF No. 1. According to the complaint, Smart Chemical "has used and uses certain telematics systems in its business, including a network of devices manufactured by Motive Technologies, Inc. of San Francisco, California": (1) "to track and monitor the movement and activation of its vehicles," (2) "to detect and log data related to activation and movement of vehicles being tracked, including driver-specific identification," (3) "to transmit live data detailing the operation and movement of vehicles to a centralized system, where managers can examine and evaluate the data," (4) "to determine and analyze driver activity in relation to vehicle activity," (5) "to determine and analyze vehicle location and routing, in relation to predetermined locations," (6) "to collect and transmit

vehicle location, bearing, and speed information," (7) "to detect movement and activation of vehicles, and transmit signals indicating movement or activation of a vehicle to a control center," (8) "to transmit received operator identification information to a control center," (9) "to detect a vehicle's proximity to landmarks," and (10) "to transmit location coordinates of [a] vehicle" using GPS transceivers. *Id.* ¶¶ 15–24.

On February 23, 2024, Smart Chemical moved to dismiss RFC's sole infringement claim, arguing that "[t]he '471 Patent is a textbook example of a patent that is invalid" because "it claims an unpatentable abstract idea." ECF No. 9 at 6.

On March 22, 2023, RFC filed an opposed motion for leave, seeking to file an amended complaint that purportedly "includes supplemental detail regarding the technology encompassed within the claims of the '471 Patent, so as to more fully elaborate as to the inventive subject matter to which the claims of the '471 Patent are directed." ECF No. 15 at 2. The Court addresses each motion in turn below.

## LEGAL STANDARDS

### I.   Motion to Dismiss

In patent cases, issues that are unique to patent law are governed by Federal Circuit precedent. *See Woods v. DeAngelo Marine Exhaust Sys., Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). But because motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) raise purely procedural issues, courts apply the law of the regional circuit—here, the Fifth Circuit—when deciding whether such a motion should be granted. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to

dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## II.     Patent Eligibility

To be eligible for patent protection, a patent must comprise "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[1] 35 U.S.C. § 101. However, "basic tools[s] of scientific and technological work," such as those related to laws of nature, natural phenomena, and abstract ideas, are not patentable. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,* 569 U.S. 576, 589 (2013).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) and *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Supreme Court laid out a two-part framework to resolve patent eligibility disputes under § 101. First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. If so, courts must then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. (internal quotations omitted). This second step is often described as the search for an "inventive concept," which ensures that the "patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo,* 566 U.S. at 72–73.

Patentability under 35 U.S.C. § 101 is a threshold legal issue that may properly be resolved at the motion to dismiss stage. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018). Although patent eligibility is a question of law, "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix*, 882 F.3d at 1128. For example, at step two of *Alice/Mayo*, the Court must examine whether the claims contain an "inventive concept." Claims constitute

---

[1] "The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

inventive concepts when they "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry," *Aatrix*, 882 F.3d at 1128, which itself is a question of fact. Thus, relying only on the materials appropriate at the motion to dismiss stage, "when the complaint contains concrete allegations that individual elements and the claimed combination are not well-understood, routine, or conventional activity, the asserted patent can survive a Rule 12(b)(6) motion at *Alice* step two." *Mirror Imaging, LLC v. PNC Bank, N.A.*, No. W-21-CV-00518-ADA, 2022 WL 229363, at *4 (W.D. Tex. Jan. 26, 2022).

### III.   Motion for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs amendment of the pleadings before trial. Although the Court "should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), leave to amend is not automatic. *N. Cypress Med. Center Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018). The decision to grant or deny a motion to amend is within the sound discretion of the trial court, though Rule 15 "evinces a bias in favor of granting leave to amend" and "a district court needs 'a "substantial reason" to deny a party's request for leave to amend.'" *Id.*

In exercising its discretion, the district court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment." *Id*. In reviewing the timeliness of a motion to amend, delay alone is insufficient: "The delay must be undue, *i.e.*, it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Id.* For futility, "[a]n amendment is futile if it would fail to survive a Rule 12(b)(6) motion."

## ANALYSIS

I.  **Motion to Dismiss (ECF No. 9)**[2]

In its motion to dismiss, Smart Chemical argues that the '471 Patent is invalid as it is directed to patent ineligible subject matter and cannot pass muster under the Supreme Court's *Alice*/*Mayo* framework. ECF No. 9 at 7. Further, Smart Chemical asserts that the Court need only analyze claim 1 of the '471 Patent as it is representative of all claims in the '471 Patent. On both points, Smart Chemical is correct.

   a.  *Claim 1 is Representative of All Claims in the '471 Patent*

To begin, when determining patent eligibility, a court need not always address each and every claim in a patent. Rather, where "all the claims are substantially similar and linked to the same abstract idea," the Court need only address a single representative claim. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). "The burden of demonstrating that a single claim is representative falls on the movant." *PerformancePartners, LLC v. FlashParking, Inc.*, No. WA-23-CV-130-KC, 2023 U.S. Dist. LEXIS 183824, at *7 (W.D. Tex. Oct. 11, 2023).

Here, as Smart Chemical demonstrates, claim 1 one is representative of the '471 Patent's claims. Claim 1 is one of only two independent claims in the '471 Patent and, as the following table demonstrates, is nearly identical to claim 15:

---

[2] At the start, the Court notes that RFC contends that Smart Chemical's motion is premature. Specifically, RFC contends that this Court should deny Smart Chemical's motion to dismiss as: (1) no fact discovery has yet been conducted and "underlying facts substantively affect a § 101 analysis," and (2) this Court has yet to engage in claim construction. ECF 17 at 16–17. However, the Court finds these arguments unpersuasive as Plaintiff has neither identified any genuinely disputed fact nor pointed to a claim construction issue that would alter this Court's analysis. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) ("[T]his court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'"); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.").

| CLAIM 1 | CLAIM 15 |
|---|---|
| A method for monitoring a vehicle, comprising: | A method for monitoring a vehicle, comprising: |
| detecting movement or activation of the vehicle; | detecting movement or activation of the vehicle; |
| transmitting a signal indicating movement or activation of the vehicle, to a control center; | transmitting a signal indicating movement or activation of the vehicle, to a control center; |
| transmitting any received operator identification information to the control center; | transmitting any received operator identification information to the control center; |
| determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle; | determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle; |
| detecting *at the vehicle* the presence of *a landmark*; and | detecting *at a landmark* the presence of *the vehicle*; and |
| transmitting data identifying *the landmark* and/*or* a location of the landmark to the control center. | transmitting data identifying *the vehicle* and a location of the landmark to the control center. |

'471 Patent at 6:18–29, 7:24–36 (distinguishing language emphasized). The only differences between claim 1 and claim 15 are the object identified under the method, the location at which that identification takes place, and content of the transmitted data. These differences are, at most, minor. And both claim 1 and claim 15 remain directed to the same abstract idea—the detecting, transmitting, and processing data to monitor vehicles.

The remaining dependent claims offer little more than minor variations on the abstract idea claimed by claim 1. *Id.* at 6:18–8:48. For example, claim 3 reads:

> 3. The method of claim 1, comprising:
>
> setting an alarm condition when the determining indicates that an operator identification was not received within the time interval.

*Id.* at 6:39–42. While this claim adds "setting an alarm condition," claim 3's limitation does nothing to change the abstract nature of the claimed idea and adds only an additional generic step for accomplishing that idea. Rather, claim 3 is still directed to the same underlying abstract idea

as claim 1—namely, of detecting, transmitting, and processing data to monitor vehicles, as explained more fully below. Next, consider claim 11, which reads:

> 11. The method of claim 1, wherein the detection is performed by a Radio Frequency identification transceiver at the landmark and a Radio Frequency identification tag at the vehicle.

*Id.* at 7:5–8. Though this claim adds an additional generic component to the mix, it remains directed to the abstract idea of detecting, transmitting, and processing data to monitor vehicles and is substantially similar to claim 1. The same can be said of the other dependent claims in the '471 Patent. *See generally id.* In addition, the Court observes that dependent claims 16 through 28 mirror the language found in dependent claims 3 through 14. *Id.* at 6:30–7:23, 7:37–8:48.

Nonetheless, in response, RFC contends that claim 1 is not representative of the '471 Patent's claims. According to RFC, "[e]ach of the 28 claims of the '471 Patent recites its own set of details and limitations," and "Defendant has a burden to address each of the limitations of each of the claims of the '471 Patent, not simply one claim out of 28." ECF No. 17 at 17–18. In so arguing, however, RFC fails to meaningfully respond to Smart Chemical's argument. Particularly, RFC does not direct the Court to any distinctions between claim 1 and the other claims in the '471 Patent—it merely states that each claim recites its own set of details and limitations but offers no discussion of *how* those additional limitations set the other 27 claims apart from claim 1. This dooms RFC's argument. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.").[3]

---

[3] At oral argument, RFC again argued that because the claims each recite different limitations, claim 1 cannot be representative of all 28 claims. However, RFC failed to explain *how* the remaining 27 claims were not substantially similar to representative claim 1 or *how* they were not directed to the same abstract idea.

9

Accordingly, the Court concludes that it need only analyze representative claim 1 under *Alice*/*Mayo* because the remainder of the '471 Patent's claims are substantially similar and are all directed to the same underlying abstract idea.

    b. *Step One*

First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. At *Alice*/*Mayo* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). In doing so, courts should be cautious of "oversimplifying the claims because at some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (internal quotations omitted). Further, when evaluating whether a patent is directed towards an abstract concept, the Federal Circuit advises courts to evaluate whether the claims "focus on a specific means or method[] or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017). To that end, the Federal Circuit has "held claims ineligible as directed to an abstract idea when they merely collect electronic information, display information, or embody mental processes that could be performed by humans." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346–47 (Fed. Cir. 2017).

Smart Chemical insists that the '471 Patent fails at step one of *Alice*/*Mayo*. To start, Smart Chemical contends that representative claim 1 is directed to "generic functional steps of a standard computer . . . and then deploying these functions to monitor vehicles." ECF No. 9 at 22–23. In addition, Smart Chemical asserts that "all of its steps (generic detecting, transmitting and

processing actions) can be accomplished entirely by a human." *Id*. at 28–29.[4] In response, RFC argues that claim 1 is "directed to concrete processes defined by a series of discrete and concrete steps performed by physical hardware" and that "there is nothing particularly 'abstract' about the inventive processes laid out in the claims of the '471 Patent." ECF No. 17 at 11. Further, RFC argues that claim 1's limitations "cannot be performed by a single human being." *Id.* at 20.

Smart Chemical has the better argument—representative claim 1, and thus the '471 Patent, is directed to the abstract idea of detecting, transmitting, and processing data to monitor vehicles.

First, representative claim 1's limitations are devoid of any "concrete or tangible form"; rather, the limitations rest in the abstract—reciting the use of generic hardware to monitor vehicles. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). That is, claim 1's limitations are composed of result-based, functional language: (1) "*detecting* movement or activation of the vehicle;" (2) "*transmitting* a signal indicating movement or activation of the vehicle, to a control center;" (3) "*transmitting* any received operator identification information to the control center;" (4) "*determining* whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;" (5) "*detecting* at the vehicle the presence of a landmark; and" (6) "*transmitting* data identifying the landmark and/or a location of the landmark to the control center." '471 Patent at 6:18–29 (emphasis added). The Federal Circuit, however, has held that such claim language fails to convey anything more than an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir.

---

[4] Smart Chemical also makes other arguments in support of its contention that the '471 Patent is directed to an abstract idea. *See generally* ECF No. 9. However, the Court need not address those additional arguments because each argument made by Smart Chemical represents an independent reason why the '471 Patent is directed to an abstract idea.

11

2017) ("At best, the constructions propose the use of generic computer components to carry out the recited abstract idea, but that is not sufficient."); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (noting that claims are often directed to abstract ideas where result-oriented limitations center on "the use of conventional devices, without offering any technological means of effecting that concept").

Of course, RFC cautions this Court not to oversimplify claim 1, citing this Court's previous opinion in *Encoditech, LLC v. Citizen Watch Company of America, Inc.* In doing so, RFC argues that Smart Chemical "ignores most of the language of claim 1 in order to artificially simplify the nature of claim 1," and "[u]pon a plain reading of claim 1, it is clear that the claim incorporates more than the 3 allegedly 'abstract' concepts identified by [Smart Chemical]." But RFC neither explains *how* Smart Chemical "artificially" simplifies claim 1 nor names the additional abstract concepts that it argues are present in claim 1. Further, RFC fails to appreciate that, in *Encoditech*, this Court held the patent in that case failed at step one as it claimed "rather generic technology using functional limitations" and "was 'directed to the abstract idea of establishing a secure wireless communication link and sending and receiving encrypted messages.'" No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019) (quoting *Encoditech, LLC v. Qardio, Inc.*, C.A. No. 1:18-864, 2019 WL 2526725, at *4 (D. Del. June 19, 2019)).

Second, the limitations recited in representative claim 1 can be carried out by a human. For example, a police officer watching a suspect's car can (1) detect the movement of that vehicle, (2) communicate that vehicle's movement to dispatch, (3) communicate the suspect's identity to dispatch, (4) determine whether that identification was provided within an acceptable time relative to the movement of the car, (5) observe a landmark, such as a stop light, near the car, and (6) communicate the name of that landmark and that landmark's location to dispatch. At step one, this

dooms representative claim 1. Indeed, where a process "is pervasive in human activity" and "can be performed in the human mind, or by a human using a pen and paper," the Federal Circuit has repeatedly found such a process unpatentable. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").[5]

In response, RFC attempts to parse claim 1's specific language in arguing that a single human cannot perform claim 1's *exact* limitations under its proposed construction of that claim.[6] This distinction, however, is of no consequence as courts have construed this inquiry to be more nuanced than RFC supposes. *See Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1174–75 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir. 2016). That is, in making this inquiry, a court should assess whether the method or process describes steps routinely performed by humans and then seeks to "apply[] them on a computer through unexplained 'processing' of data." *Id.* (citing *SmartGene, Inc. v. Advanced Biological Labs, SA*, 555 F. App'x. 950 (Fed.Cir.2014)). That is what representative claim 1 does here—it takes steps that a human can perform manually and seeks to automate those steps, introducing technical jargon along the way.

---

[5] The Court notes that the animating concern underlying *Alice*/*Mayo* is preemption. *See Bilski v. Kappos*, 561 U.S. 593, 611–12 (2010) ("Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."); *cf. CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("Methods which can be performed entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed *entirely* in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). This concern is particularly relevant where a patent intrudes on unremarkable processes practiced by humans daily. *See Ericsson*, 955 F.3d at 1327.

[6] RFC argues that Smart Chemical improperly construes "transmitting" to mean "communicating" and "control center" to mean "person of authority" in making its arguments. ECF No. 17 at 21–22.

13

At step one, the Court concludes that representative claim 1 is directed to the abstract idea of detecting, transmitting, and processing data to monitor vehicles.

    *c. Step Two*

Next, if the patent is directed to patent-ineligible concepts, the court must then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (internal quotations omitted). This second step is often described as the search for an "inventive concept," which ensures that the "patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 566 U.S. at 72–73.

At step two of *Alice/Mayo*, Smart Chemical argues the '471 Patent fails as well. Specifically, Smart Chemical asserts that the '471 Patent fails step two as the claims do "not include an inventive concept that could transform [them] into a patent-eligible invention." *Id.* at 12. In response, RFC contends that the '471 Patent's claims are inventive as they "recite steps and limitations that are not disclosed in the prior art, and which provide demonstrable functional advantages over the prior art." ECF No. 17 at 12; *see also id.* at 13.

Upon review, the Court concludes that representative claim 1, and thus the '471 Patent, fails to contain an inventive concept that transforms the abstract idea recited into a patent-eligible invention. The six limitations of claim 1 merely describe the collection of information using unspecified technology and then processing that data using more unspecified technology to monitor vehicles. Critically, the specification acknowledges that the '471 Patent's claims could be carried out using conventional computing components. '471 Patent at 5:53–59. ("[T]hose skilled in the art will appreciate that the elements and methods or processes described herein can be implemented using a microprocessor, computer, or any other computing device, and can be

14

implemented in hardware and/or software, in a single physical location or in distributed fashion among various locations or host computing platforms."). But "the steps of monitoring, recording, and inputting information represent insignificant 'data-gathering steps,' and thus add nothing of practical significance to the underlying abstract idea." *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 416 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016) citations omitted) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed.Cir.2011)). And where "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information," there is no inventive concept. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).

Though RFC contends that because the '471 Patent's ordered combination is not found in the prior art, the '471 Patent necessarily discloses an inventive concept. However, as Defendant contends, this argument is misplaced. As explained by the Federal Circuit in *Synopsys, Inc. v. Mentor Graphics Corp.*, an abstract idea does not become patent-eligible subject matter simply because an ordered combination may not be disclosed in the prior art. 839 F.3d 1138, 1151 (Fed. Cir. 2016). Instead, the question at step two is whether the "patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 566 U.S. at 72–73.

Of course, an inventive concept can be found when a patent applies well-known technology to solve a technological problem in conventional industry practice or improve technological processes. *Alice*, 573 U.S. at 223. However, '471 Patent's specification notes that systems were already "available to automatically provide the present location of a truck to a communication or dispatch center, whereby a location of the truck provided by an onboard Global Positioning System (GPS) receiver." '471 Patent at 1:18-23. And RFC's complaint makes no concrete allegations that

the '471 Patent's claim 1 applied well-known technology to solve a longstanding problem or improve technological processes in the vehicle monitoring industry. *See generally* ECF No. 1.[7] The complaint fails to include even conclusory allegations to this effect.

Accordingly, the Court concludes that representative claim 1, and thus the '471 Patent, fails step two. In turn, the Court thus holds that RFC failed to adequately allege infringement of a valid patent under *Alice/Mayo*.

### d. Motion for Leave to File an Amended Complaint (ECF No. 15)

In addition, RFC seeks leave to file its amended complaint, which reasserts its sole claim of infringement. ECF Nos. 15, 15-1. According to RFC, the proposed amended complaint "includes supplemental detail regarding the technology encompassed within the claims of the '471 Patent, so as to more fully elaborate as to the inventive subject matter to which the claims of the '471 Patent are directed." ECF No. 15 at 2. In response, Smart Chemical argues that the proposed amended complaint fails to transform the RFC's pleading into one that could survive under *Alice/Mayo*. ECF No. 26 at 5. Thus, Smart Chemical contends that RFC's proposed amendments are futile and urges this Court to deny RFC's motion for leave.

A court may properly deny leave to amend when the proposed amendments would be futile. *Martinez v. Nueces County, Texas*, 71 F.4th 385, 391 (5th Cir. 2023*)*. When assessing the futility of amendment in the *Alice/Mayo* context, the Federal Circuit has observed that a "district court [is] not required to credit . . . conclusory allegations" "that the claimed steps were not well-known, routine, and conventional." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023).

Here, none of the amendments introduced in the proposed amended complaint rectify the patent eligibility issues. First, RFC cannot change the fact that the '471 Patent's claim 1 is directed

---

[7] As explained below, Plaintiff's proposed amended complaint suffers from the deficiencies. *See generally* ECF No. 15-1.

to an abstract idea. As the Federal Circuit observed in *Sanderling*, "[n]o amendment to a complaint can alter what a patent itself states." *Id.* at 706. Indeed, the '471 Patent remains directed to the idea of detecting, transmitting, and processing data to monitor vehicles. *See generally* '471 Patent.

Second, though RFC could have introduced concrete allegations that the claims at issue were not well-known, routine, and conventional, RFC's proposed amended complaint adds only conclusory allegations that the '471 Patent's claims contain an inventive concept. *See* ECF No. 15–1 ¶¶ 15–61. For example, the proposed amended complaint contends that "[t]he claims of the '471 Patent are directed to certain novel, inventive and patentable processes for monitoring fleet vehicles and preventing theft and unauthorized usage," *id.* ¶ 15, and that "[e]ach of the [claims'] steps and limitations provides the opportunity for technological advantages over what was well-understood, routine and conventional at the time of the filing of the patent application," *id.* ¶ 52. However, the amended complaint does not disclose *how* the steps represent technological advantages over what was well-understood, routine and conventional at the time the '471 Patent was filed. *See generally id.* Upon review, the proposed amended complaint's newly added inventive concept allegations are precisely the type of conclusory allegations that this Court need not accept as true at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court holds that RFC's proposed amended complaint is futile as it too fails under the *Alice*/*Mayo* framework.

## CONCLUSION

For the foregoing reasons, Smart Chemical's motion to dismiss (ECF No. 9) is **GRANTED**. Further, RFC's motion for leave to file an amended complaint (ECF No. 15) is **DENIED**. As this Court already considered RFC's proposed amended complaint and RFC

identified no additional facts that could save its claim, RFC's claim is **DISMISSED WITH PREJUDICE**. A final judgment will issue separately pursuant to Rule 58.

It is so **ORDERED**.

**SIGNED** this 6th day of August, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE